The **MUNCHAK CORPORATION** and **RDG** Corporation d/b/a the Carolina Cougars, a joint venture, Plaintiffs,

v.

**RIKO ENTERPRISES, INC.,**
**Defendant.**

**No. C–194–G–73.**

United States District Court,
M. D. North Carolina,
Greensboro Division.

Dec. 21, 1973.

William Zuckerman, Greensboro, N. C., for plaintiffs.

L. P. McLendon, Jr., Greensboro, N. C., for defendant.

## MEMORANDUM

GORDON, Chief Judge.

This case is here on defendant's (Riko Enterprises, Inc., hereafter Riko) motion to dismiss an action brought by plaintiff (The Munchak Corporation and RDG Corporation, d/b/a The Carolina Cougars, hereafter the Cougars), for alleged tortious interference with contractual relations. The defendant, a Pennsylvania corporation, makes its motion pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure alleging lack of in personam jurisdiction over the defendant. A brief statement of the history of this and related litigation will help define and clarify the specific issues now to be decided. The written memoranda of the litigants in this action have been helpful to this end.

In 1969, the predecessors in interest to the plaintiff entered into a contract with William John Cunningham whereby Cunningham obligated himself to perform services as a professional basketball player for the Carolina Cougars. Cunningham failed to honor this contract, and plaintiff thereafter filed suit in federal court to enjoin Cunningham from performing as a professional basketball player for any team other than the Cougars and, on July 26, 1972, pursuant to the direction of the United States Courts of Appeals, Fourth Circuit, an injunctive order to this effect was entered. In November, 1972, following this order, the defendant filed suit against the Carolina Cougars, the plaintiff herein, and William Cunningham, in the Court of Common Pleas, Philadelphia County, Pennsylvania. In that action, defendant alleges breach of contract as against Cummingham, and tortious interference with contractual relationships as against the Cougars. The Cougars removed this case to the United States District Court for the Eastern District of Pennsylvania, but the action was remanded to the state court, where it is now pending. Finally, in June, 1973, the plaintiff Cougars brought the instant action. The plaintiff seeks to recover damages suffered as a result of defendant's alleged wrongful interference with plaintiff's contractual relations with Cunningham, and additionally, to obtain an order enjoining the action pending in the Pennsylvania state court. As earlier noted, the defendant now moves to dismiss the instant action for lack of personal jurisdiction. Subject matter jurisdiction, not here challenged, is founded on diversity of citizenship.

When in personam jurisdiction is contested in diversity cases, the court must undertake a two-part inquiry. First, it must be determined if the applicable state law would allow the exercise of in personam jurisdiction over the party in question; second, assuming the answer of the first inquiry to be yes, the court must determine if the exercise of jurisdiction as authorized by state law comports with due process concepts embodied in the Fourteenth Amendment to the United States Constitution. *See*

Bowman v. Curt G. Joa, Inc., 361 F.2d 706 (4th Cir. 1966); Johnston v. Time, Inc., 321 F.Supp. 837 (M.D.N.C.1970). Controlling as to both inquiries in this case are the extent of the activities of the defendant which have caused it to come into contact with North Carolina and to invoke the protection and benefits of its laws. These activities have been much discussed in the pleadings and memoranda heretofore filed by the litigants and in the oral arguments on defendant's motion to dismiss. Although there is some dispute as to certain factual matters, the major disagreement between the parties concerns the legal effect of these activities.

■ Plaintiff contends that defendant controlled the defense of the earlier action brought in this Court by plaintiff against Cunningham, including the payment of costs. Although defendant denies that it "controlled" the litigation, there is no dispute as to the defendant's participation in that action on Cunningham's behalf. In either event, presence in a state solely to participate in litigation is not, by itself, sufficient connection with that state to make a person amenable to the state's jurisdiction. *See* Dragor Shipping Corp. v. Union Tank Car Company, 361 F.2d 42 (9th Cir. 1966). Moreover, to so hold might conflict with traditional immunity principles designed to further the orderly administration of justice. *See generally* Vol. 4 Wright and Miller, Federal Practice and Procedure, Section 1076.

A second contact with North Carolina by the defendant set forth as a basis for finding jurisdiction over the defendant is the defendant's practice of sending basketball scouts into North Carolina to observe and report on college basketball players. These scouts are without authority to recruit or even negotiate with local college players and, in fact, are prevented from doing so by the National Basketball Association bylaws. Apparently the scouts are free to inquire of the college player whether or not he would be interested in playing in the N.

B.A., but further discussions toward this end are prohibited.

The plaintiff also sets forth the fact that National Basketball Association games, including those in which the Philadelphia 76ers (owned and operated by the defendant) participate, are televised in the State of North Carolina. This television exposure results from a contract between the N.B.A. and the television network. The defendant is not a party to this contract, except perhaps as a third party beneficiary, nor has defendant contracted with any North Carolina television station in this regard. Nevertheless, the plaintiff contends that the additional revenue accruing to the defendant through the television exposure in North Carolina is a "contact" with this state which is sufficient to justify the exercise of jurisdiction over the defendant.

Finally, although not specifically enumerated as a "contact" with North Carolina, the plaintiff contends that the tort which defendant is alleged to have committed, provides a sufficient basis for exercising jurisdiction in this case.

*North Carolina Statutory Jurisdiction*

Plaintiff first sets forth N.C. General Statute § 55–145(a)(4) as a state law basis for the exercise of personal jurisdiction. This provision provides:

"§ 55–145. *Jurisdiction over foreign corporations not transacting business in this State.*—(a) Every foreign corporation shall be subject to suit in this State, by a resident of this State or by a person having a usual place of business in this State, whether or not such foreign corporation is transacting or has transacted business in this State, and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:

"(1) Out of any contract made in this State or to be performed in this State; or

"(2) Out of any business solicited in this State by mail or otherwise

if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the State; or

"(3) Out of the production, manufacture, or distribution of goods by such corporation with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed, or sold or whether or not through the medium of independent contractors or dealers; or

"(4) Out of tortious conduct in this State, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance."

The only question which must be resolved under this section is whether or not a tortious act was committed in North Carolina; there is no contention that any other provision would apply. If the answer is in the affirmative, there is a statutory basis in state law for the exercise of in personam jurisdiction.

 Plaintiff correctly states that in North Carolina, "The place of a wrong is in the state where the last event takes place which is necessary to render the actor liable for an alleged tort." Farmer v. Ferris, 260 N.C. 619, 133 S.E.2d 492, 498 (1963). Plaintiff further cites language in *Ferris* which indicates that the last event may be the consequence of the tortious conduct, i. e., the damage. Farmer v. Ferris, *supra*, at 498. Since in the case at bar the last essential element of the tortious conduct here involved is the sustaining of damages by the plaintiff, and since such damages were sustained by the Cougars in North Carolina, plaintiff contends that the tortious conduct involved in this case occurred in North Carolina, thereby supporting jurisdiction under G.S. § 55–145(a)(4).

 Even assuming as correct the plaintiff's contention that the occurrence of harm constitutes the last event of tortious conduct where actual damage is an essential element of a tort so as to establish the situs of the tort, surely the occurrence of damages cannot be construed to be an activity or act by the defendant as set forth in the statute. Under the clear wording of the relevant portion of this statute, the defendant must have engaged in "tortious conduct" in North Carolina for this provision to apply. The further language with respect to "repeated activity or single acts" further indicates that the defendant must have committed some act in this State, whether it be one of misfeasance or nonfeasance. The occurrence of damages is a result of defendant's improper conduct. It is defendant's conduct which is the focus of the language in this section of the statute, not the result of that conduct. *See* Marshville Rendering Corp. v. Gas Heat Eng. Corp., 10 N.C.App. 39, 177 S.E.2d 907 (1970). This is important because G.S. § 55–145 has been construed to apply only as to "local actions," i. e., causes of action which arise in this state. Atlantic Coast Line R. Co. v. J. B. Hunt & Son, Inc., 260 N.C. 717, 133 S.E.2d 644 (1963). Thus when seeking to acquire personal jurisdiction under G.S. § 55–145(a)(4) a plaintiff must show: (1) the cause of action arose in North Carolina; and (2) the defendant committed one or more acts which gave rise to the cause of action in this State. *See* Bowman v. Curt A. Joa, Inc., *supra*, 361 F.2d at 174; Johnston v. Time, Inc., *supra*. Reason and fundamental fairness compel this result. If plaintiff's interpretation was accepted, the courts of this State could acquire jurisdiction over a defendant who has never been in this State, never transacted business in this State, and never had intentions to do so nor reasonably foresaw that such would occur. It should be noted that the opinion in *Fer-*

*ris* contains language which could be construed to support plaintiff's position. Farmer v. Ferris, *supra,* 133 S.E.2d at 498. However, this language was discussed in *Marshville* and satisfactorily explained therein. *See* Marshville Rendering Corp. v. Gas Heat Eng. Corp., *supra,* at 910–911. No case has been found which has established North Carolina as the situs of the cause of action without some act by the defendant which gave rise to the tort having occurred in this State. *See e. g.,* Johnston v. Time, Inc., *supra.* (new libelous publication in N.C.), Jewell v. Price, 264 N.C. 459, 142 S.E.2d 1 (1965) (sale consummated in N.C.).

▆ Of course, to ascertain the controlling law is only to begin the inquiry. It now must be determined if jurisdiction over the defendant exists under G.S. § 55–145(a)(4) as this section has been construed. Under the facts herein, the requirements of this section have not been met. The uncontradicted evidence demonstrates that every act which defendant is alleged to have committed occurred in a state other than North Carolina. The defendant engaged in extensive discussions with Cunningham and it is these discussions, which allegedly induced Cunningham to dishonor his contract with the Cougars, which are the basis of the tort alleged in this case. Therefore, the cause of action did not arise in North Carolina, nor did defendant engage in tortious conduct in this state. Accordingly jurisdiction over the defendant cannot be founded in G.S. § 55–145(a)(4).

Plaintiff next asserts G.S. § 1–75.4(4) as a statutory basis for the exercise of jurisdiction over this defendant. This section provides:

"§ 1–75.4. *Personal jurisdiction, grounds for generally.*—A court of this State having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to Rule 4(j) of the Rules of Civil Procedure under any of the following circumstances:

\* \* \* \* \* \*

"(4) Local Injury; Foreign Act.— In any action for wrongful death occurring within this State or in any action claiming injury to person or property within this State arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury either:

a. Solicitation or services activities were carried on within this State by or on behalf of the defendant; or

b. Products, materials or thing processed, serviced or manufactured by the defendant were used or consumed within this State in the ordinary course of trade."

▆ Clearly, the plaintiff has carried his burden of showing the jurisdictional elements of G.S. § 1–75.4(4) to be met. Plaintiff, the Carolina Cougars, which has its principal office and place of business in Greensboro, North Carolina, is alleged to have sustained financial losses as a result of defendant's tortious conduct. However, in order to establish in personam jurisdiction, the plaintiff must also show either one of two conditions specified in the proviso to that section to be present. It is with respect to these requirements that the contacts between the defendant and the State of North Carolina become relevant. It is clear both from the wording of the statue and applicable case law that the provisions of this "long-arm" statute are to be liberally construed in favor of finding personal jurisdiction, consistent with due process limitations. *See* N.C.G.S. § 1–75; First-Citizens Bank and Trust Co. v. McDaniel, 18 N.C.App. 313, 197 S.E.2d 556 (1973); *cf.* B & J Manufacturing Co. v. Solar Industries, Inc., 483 F.2d 594 (8th Cir. 1973).

▆ Accordingly, there is no need to engage in a laborious analysis of the meanings of the key terms in the two alternative requirements in the provisos set forth in § 1–75.4(4). To strictly construe the terms as set forth in those subsections so as to defeat in

**1372**

personam jurisdiction when such jurisdiction would be constitutionally permissible would conflict with the legislative and judicial mandate. Rather, it is concluded that the activities of the defendant, which include preliminary contacts with North Carolina basketball players with some expectation of future contract negotiations, and the knowing participation in athletic contests, at least some of which will be shown on television throughout the United States, including North Carolina, can reasonably be included within the solicitation and marketing activities embodied in the subject statutory provisions. There is no requirement that the cause of action, pursuant to which the jurisdictional claim is raised, be related to the activities of the defendant which gives rise to the in personam jurisdiction. Further, defendant's contention that G.S. § 1–75.4 was not intended to embrace "intangible injuries," is rejected. Such a result would conflict with the clear wording and intent of the North Carolina long arm statute. Of course, whether activities are sufficient under the Constitution to subject this defendant to North Carolina's jurisdictional reach is yet to be decided.

Plaintiff asserts still a third statutory basis for asserting personal jurisdiction over the defendant in this case. N.C.G. S. § 1–75.4(6) states:

"(6) Local Property.—In any action arises out of:

a. A promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to create in either party an interest in, or protect, acquire, dispose of, use, rent, own, control or possess by either party real property situated in this State; or

b. A claim to recover for any benefit derived by the defendant through the use, ownership, control or possession by the defendant of tangible property situated within this State either at the time of the first use, ownership, control or possession or at the time the action is commenced; or

c. A claim that the defendant return, restore, or account to the plaintiff for any asset or thing of value which was within this State at the time the defendant acquired possession or control over it."

Because of the holding herein with respect to the in personam jurisdiction claimed pursuant to G.S. § 1–75.-4(4), an extensive analysis of this issue will not be undertaken. Suffice it to say that plaintiff alleges that defendant wrongfully induced Cunningham to breach his contract obligations with the plaintiff. In North Carolina a contract right is a property right. Carolina Overall Corp. v. East Carolina Linen Supply, Inc., 8 N.C.App. 528, 174 S.E.2d 659 (1970). A fortiori, it is an "asset or thing of value." Since the holder of the contract right alleged in this case is a North Carolina resident, the situs of the "asset or thing of value" is in this State and was when defendant is alleged to have acquired possession of it. Again, a strict interpretation of this provision as contended by defendant is not necessitated by its language and would conflict with the clear intent of the legislature. Therefore, it is concluded that G.S. § 1–75.4(6)(c) furnishes an adequate and independent statutory basis for the exercise of in personam jurisdiction over the defendant.

*Due Process—Fourteenth Amendment*

Having found a basis in state law for exercising in personam jurisdiction over the defendant under the facts and circumstances of this case, it remains to be determined whether jurisdiction can be exercised under limitations imposed by the Due Process Clause of the Fourteenth Amendment. The guiding principle for this determination was set forth by the United States Supreme Court in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L. Ed. 95 (1945). In that case, the Court stated " . . . whether due process is satisfied must depend rather upon the

quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." International Shoe Co. v. State of Washington, *supra* at 319, 66 S.Ct. at 160. The Court further stated that the maintenance of the suit by the state must not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. State of Washington, *supra* at 316, 66 S.Ct. at 158. This principle was more fully developed by the Supreme Court in McGee v. International Life Insurance Co. In that case a Texas insurance company insured a California resident. The insurance policy was mailed to the insured in his state of residence, and premium payments were mailed by the insured from his California home. The Texas insurance company maintained no offices or agents in California nor did it solicit business, except for the one policy involved, in that state. Upon the death of the insured, the beneficiary, also a resident of California, brought suit in California to collect the proceeds. When the case reached the United States Supreme Court, the Court held that the Texas insurance company had, through the insurance contract, subjected itself to the jurisdiction of California with respect to suits on that policy. McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

As far as this case seemed to go in allowing a state to extend its jurisdictional reach, the Court in the same term emphasized that due process still imposes some limits. The Court held, in the complicated fact setting before it, that there be some "minimal contacts with the state" such that "the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1957).

Within the construction established by this trilogy of cases, a multitude of lower court decisions have considered this issue. Under the facts of the instant case, two theories could be advanced to support jurisdiction over the defendant. The first involves the doing of a tortious act which has local consequences. The second theory is that the defendant was doing business in North Carolina to such an extent that this State may properly exercise jurisdiction over it even if the cause of action in issue is unrelated to those activities.

■ There is no question that under certain circumstances a state can acquire jurisdiction over a person or corporation when the effect of an act done by that person or corporation occurs in that state, even though the act giving rise to the effect was done elsewhere. *See* Leasco Data Processing Equipment Corp. v. Maxwell, 468 F.2d 1326 (2d Cir. 1972). This principle is discussed in Section 37 (jurisdiction over persons) and Section 49 (jurisdiction over corporations) of the Restatement (2d) of Conflict of Laws. The Restatement would uphold jurisdiction even when the effect in the forum state is unintended, so long as it was reasonably foreseeable, that the Carolina Cougars would suffer damages in this State.

However, the rule as set forth by the Restatement is limited to the extent that the exercise of jurisdiction must not be unreasonable. Several factors bear on this issue including the extent of the relationship of the state to the defendant and plaintiff, the nature and quality of the effects resulting from the act, and the inconvenience of the defendant caused by having to stand suit in the forum state. As the nature and effect increase in intensity (e. g. danger to citizens), the need for involvement with the forum state is correspondingly lessened. Thus, by way of example, the Restatement asserts that if X explodes dynamite close to the border of State Y, X would be subject to the jurisdiction of State Y for injuries caused by the explosion, notwithstanding the absence of any other contracts with the state. *See generally* Restatement of Conflict of Laws (2d), Section 37.

The principles set forth above underly the stream of commerce theory for exercising in personam jurisdiction which the plaintiff asks to be adopted in this case. In these cases, the defendant, often with no direct contact with the forum state, manufactures or distributes defective goods which it knows, or has reason to know, will be distributed in the state where the injury occurs. It is not necessary that the defendant have intended to ship the products to that particular state; it is sufficient to support jurisdiction in that state if it was reasonably foreseeable that in ordinary commercial channels the product would come into that state. *E. g.*, Jetco Electronics Industries, Inc. v. Gardner, 473 F.2d 1228 (5th Cir. 1973); Burton Shipyard, Inc. v. Williams, 448 F.2d 640 (9th Cir. 1971); Jones Enterprises, Inc. v. Atlas Service Corp., 442 F.2d 1136 (9th Cir. 1971); Coulter v. Sears, Roebuck and Co., 426 F.2d 1315 (5th Cir. 1970); Duple Motor Bodies, Ltd. v. Hollingsworth, 417 F.2d 231 (9th Cir. 1969). It might be said of these cases that jurisdiction follows the product so long as the product moves in a reasonably foreseeable manner. The defendant has consciously chosen to engage in a widespread commercial activity, and it is not unfair to expect him to respond to lawsuits resulting from defects in these products where those defects cause harm.

■■■ This is not the situation in the case at bar. True, the defendant engages in a widely dispersed entertainment activity. However, unlike the "stream of commerce" fact setting, the injuries alleged in this lawsuit did not result from this activity of the defendant. The agent of the harm was not the defective product, i. e. the entertainment activities, which would correspond to the product of a manufacturer, caused no harm. The harm to plaintiff was caused by the alleged tortious interference with a contract, and this all occurred in Pennsylvania. To be contrasted is the stream of commerce situation in which a product is manufactured defectively in state A, the product is then shipped to an independent dealer in state B, and is ultimately purchased by a citizen of the latter state and injury results. No such shipment occurred in this case and any discussion of such commercial activity fails to distinguish between the entertainment aspects of defendant on the one hand, where the theory might properly apply, and the tortious conduct of the defendant on the other. It is concluded that although the defendant could reasonably foresee that harmful consequences from his alleged tortious conduct would occur in North Carolina, this fact alone is insufficient for the exercise of in personam jurisdiction over him by this State. It is felt that such an extension of jurisdictional reach exceeds that upheld under the "stream of commerce" rationale, a doctrine which itself significantly extends due process concepts.

Nor can this case be brought within constitutional limitations when the unrelated activities of the defendant in this State are considered. These activities are miniscule and will not here be repeated. There is no pervasive presence of the defendant in this State such that it can be fairly concluded that defendant is enjoying the protection and benefits of its laws. Any marketing activity is limited to sporadic television shows from which defendant benefits only indirectly. Defendant's share of the revenue derived from the television contract is predetermined and will not vary whether or not defendant's basketball games are televised in North Carolina. Moreover, defendant has no control over which, if any, of its games are shown on national television. Defendant's agents frequently enter this State, but do so for the purpose of evaluating the talents of local basketball players only, employment negotiations being beyond their authority. Such tenuous connections with this State fall short of the minimum contacts necessary to satisfy due process requirements. *See e. g.* Fulghum Industries, Inc. v. Walterboro Forest Products, 345 F.Supp. 296 (S.D.Ga.1972); Aylstock v.

Mayo Foundation, 341 F.Supp. 560 (U. S.D.C.Mont.1972).

Finally, the juxtaposition of the two theories provides insufficient basis to assert jurisdiction over this defendant. Viewing the totality of defendant's activities relevant to this issue, the alleged tortious conduct committed in Pennsylvania and those activities which can be viewed as solicitation and marketing, it simply cannot be concluded that the minimum contacts test is met. Accordingly, the defendant's motion to dismiss must be granted. Of course, plaintiff is not without an adequate forum to assert its claims against the defendant. There has been no suggestion that plaintiff cannot receive a fair and adequate resolution of all issues raised by its complaint in the action currently pending in Pennsylvania.

In view of the increased filings in this District and the complexity of the same, it is essential that courtroom time be conserved as much as possible. The Court found the briefs of counsel most helpful in deciding this case, but is constrained to say that the oral arguments added little, if anything, toward additional understanding of the case. In particular, the defendant's presentation was much too long and repetitious.