VISHAY INTERTECHNOLOGY, INC., A
Delaware Corporation, Appellant,

v.

DELTA INTERNATIONAL CORPORA-
TION, A California Corporation,
Appellee.

No. 82–1087.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 7, 1982.

Decided Dec. 13, 1982.

Noel Lee Allen, Raleigh, N.C. (William D. Harazin, Barringer, Allen & Pinnix, Raleigh, N.C., on brief), for appellant.

H. Julian Philpott, Jr., Raleigh, N.C. (William S. Aldridge, Broughton, Wilkins & Crampton, P.A., Raleigh, N.C., on brief), for appellee.

Before WINTER, Chief Judge, ERVIN, Circuit Judge, and HAYNSWORTH, Senior Circuit Judge.

ERVIN, Circuit Judge:

This is an appeal by Vishay Intertechnology, Inc. ("Vishay") from the dismissal of its cause of action against Delta International Corporation ("Delta"). Vishay sought monetary damages from Delta for slander, unfair business practices, tortious interference with contract, and abuse of process. The district court dismissed Vishay's complaint for lack of personal jurisdiction. Because we find that the requirements of the North Carolina long-arm statute and due process are satisfied, we reverse.

I.

Vishay is a corporation organized under the laws of Delaware. Vishay, through its branch located in North Carolina, is in the business of manufacturing and selling measurement instruments. Delta is a California corporation that in North Carolina neither maintains a place of business nor transacts any business.

In 1980, an agency of the government of the Republic of Korea invited bids for sixty units of a measurement device manufactured by, among others, Vishay. Vishay's agent in Korea submitted a bid. That bid reflected Vishay's foreign list price for the measurement devices. Vishay charges two list prices for its measurement devices, one for domestic markets and the other for foreign markets. The foreign price is higher because the marketing of devices overseas involves substantially greater costs for sales commissions, promotions, service, warranty work, and technical assistance.

Vishay asserts that on May 9, 1980, Delta's vice president, Lester Mannos, contacted Vishay by telephone, and requested price information for one unit of the device in question. Mannos identified himself as a representative of "Delta Corporation," rather than as a representative of "Delta International." Vishay's order clerk, believing that the quotation was for a domestic sale, informed Mannos of the domestic price for one unit.

Mannos then requested that Vishay supply a written quote of that price. The order clerk stated that her supervisor would have to prepare the written quote. The supervisor, however, recognized Delta as an exporter and instructed the order clerk to contact Delta and inform it of the foreign list price.

The order clerk contacted Mannos, who denied that Delta was an exporter. The supervisor then contacted Mannos and explained the reason for the difference between the foreign and domestic price. Mannos continued to insist that the domestic price should apply to his solicitation. The supervisor informed him that his request could not be granted and that an order at the domestic price could not be filled without higher management authorization. On May 16, 1980, Vishay advised Delta that any quotations made by Vishay to Delta were withdrawn as of that date.

On May 27, 1980, Vishay received a purchase order from Delta requesting 60 units at the domestic price. That allegedly is the first time Delta expressed an intent to order more than one unit. Delta admits that the units were for resale to Korea. On May 29, 1980, Vishay rejected the purchase order on the basis of the May 16, 1980, quote withdrawal.

Vishay also asserts that Delta bid a price on the Korean contract based on Vishay's domestic price for the devices. Delta was the low bidder on the contract. Vishay's agent was the next lowest bidder. Vishay informed the Korean government that Delta's bid was deceptively obtained. The Korean government was unable to disqualify Delta's bid because of the government's bidding policy.

On five occasions between May and July of 1980, Delta either telephoned or wrote Vishay demanding that the instruments be supplied at the domestic price. On three occasions, Delta threatened Vishay with litigation if Vishay did not honor the domestic price. Vishay still refused to provide the instruments to Delta at the domestic price.

On August 25, 1980, Vishay was served with a summons and complaint in an action filed by Delta in the United States District Court for the Central District of California. In that action, Delta claimed, *inter alia,* that Vishay was guilty of breach of an oral contract for the delivery of the devices at the domestic price. Following a hearing, Delta's complaint was dismissed on the merits.

Delta eventually succeeded in selling comparable devices to the Korean government. Delta obtained those devices from a competitor of Vishay.

## II.

To resolve a question of personal jurisdiction, the court must engage in a two step analysis. First, the court must determine if the applicable North Carolina law would allow the exercise of long-arm jurisdiction over Delta. If so, the court must determine if such an exercise of jurisdiction comports with due process. *Bowman v. Curt G. Joa, Inc.,* 361 F.2d 706, 711 (4th Cir.1966).

## A. NORTH CAROLINA LONG–ARM STATUTE

There is a clear mandate that the North Carolina long-arm statute be given a liberal construction, making available to the North Carolina courts "the full jurisdictional powers permissible under federal due process." *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 231 S.E.2d 629, 630 (1977); *Mabry v. Fuller-Shuwayer [Schuwayer] Co., Ltd.*, 50 N.C.App. 245, 248, 273 S.E.2d 509, 511, *review denied,* 302 N.C. 398, 279 S.E.2d 352 (1981).

Vishay seeks personal jurisdiction over Delta under two provisions of the North Carolina long-arm statute, N.C.Gen.Stat. § 55–145(a)(4) (tortious conduct within North Carolina), and § 1–75.4(4)(a) (injury and solicitation within North Carolina).

The district court held that § 55–145(a)(4) did not provide jurisdiction since "[n]o element of any alleged tort occurred in North Carolina ...." With respect to § 1–75.4(4)(a), the district court stated that although "the court cannot conclude as a matter of law that the solicitations were insufficient to bring defendant within the ambit of the statute [,] ... it is unnecessary to definitively determine whether the statute is satisfied, as the court concludes that due process is not."

### 1. *N.C.Gen.Stat. § 55–145(a)(4).*

When seeking to acquire personal jurisdiction under § 55–145(a)(4),[1] a plaintiff must show: (1) the cause of action arose in North Carolina; and (2) the defendant committed one or more acts within North Carolina that gave rise to the cause of action. *Munchak Corp. v. Riko Enter-*

*prises, Inc.,* 368 F.Supp. 1366, 1370 (M.D.N.C.1973). The parties' arguments here focus on the second requirement. Since a cause of action is considered to arise where damage occurs, *id.* at 1370, Vishay's location in North Carolina establishes the first requirement.[2]

Vishay argues on appeal that its claims against Delta for unfair business practices, interference with contractual relations, and abuse of process arise out of Delta's tortious conduct within North Carolina. Vishay alleges that (1) Delta's business conduct was unfair and deceptive in violation of N.C.Gen.Stat. § 75–1.1 and that essential facts in that claim are the initial solicitation of price information in which Delta deceptively identified itself, thereby occasioning Vishay's release of a domestic price quotation, and Delta's subsequent telephone and written communications with Vishay; (2) Delta's communications with Vishay are similarly essential to the alleged tortious interference with contractual relations because Delta interfered with Vishay's contract with a third party through the use of the wrongfully obtained price quotation; and (3) the essential fact in the abuse of process claim is Delta's causing service of process on Vishay in North Carolina.

The first question raised by Vishay's arguments is whether telephone and written communications initiated by Delta from California constitute "tortious conduct" occurring within North Carolina. We hold that those communications are tortious conduct within North Carolina.

In *Murphy v. Erwin-Wasey, Inc.,* 460 F.2d 661 (1st Cir.1972), which was decided under a comparable Massachusetts long-arm stat-

---

1. N.C.Gen.Stat. § 55–145(a)(4) provides:

    Jurisdiction over foreign corporation not transacting business in this State.——(a) Every foreign corporation shall be subject to suit in this State, whether or not such foreign corporation is transacting or has transacted business in this State and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:

    .    .    .    .    .

    (4) Out of tortious conduct in this State, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

2. Delta, citing *Munchak,* and the district court incorrectly state that the first requirement is that the defendant be guilty of tortious conduct. *Munchak* does not so require. Indeed, if such were the requirement, the plaintiff would be put to the task of proving the ultimate cause of action before he could establish personal jurisdiction.

ute, the First Circuit permitted personal jurisdiction over an out-of-state defendant whose only contacts with Massachusetts were a few phone calls and letters to the plaintiff. Those contacts were the heart of the plaintiff's fraud claim. The court concluded:

> We would be closing our eyes to the realities of modern business practices were we to hold that a corporation subjects itself to the jurisdiction of another state by sending a personal messenger into that State bearing a fraudulent misrepresentation but not when it follows the more ordinary course of employing the United States Postal Service as its messenger .... Where a defendant knowingly sends into a state a false statement, intending that it should then be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that State. *Id.* at 664 (citations and footnote omitted).

Delta argues that *Murphy* is questionable authority, relying on *Margoles v. Johns,* 483 F.2d 1212 (D.C.Cir.1973). That reliance is not well placed. In *Margoles,* the court held that phone calls to the District of Columbia by a Wisconsin defendant were not acts in the District of Columbia within the meaning of the District of Columbia long-arm statute. Unlike the North Carolina statute, which predicates jurisdiction on "tortious conduct" within the state, the District of Columbia statute speaks of "acts" within the district. The *Margoles* court distinguished the two types of statutes: while the North Carolina type statutes generally are broad, limited only by due process considerations, the District of Columbia type statutes generally are more restrictive. Thus, in explaining its inability to follow *Murphy,* the court stated:

> We hope that we are not "closing our eyes to the realities" of the situation, but rather opening them to the realities of the statute. The statute is plain, easy to understand language—it speaks not of "tortious [conduct]" but of "act," and its structure shows an intent that when an act is outside the forum state other significant contacts are necessary before

jurisdiction can be exercised. Its interpretation should be so limited. *Id.* at 1219.

The court implies that if it were construing a statute such as North Carolina's, it would permit the exercise of personal jurisdiction.

In addition to *Margoles,* Delta cites three other cases to support the suggestion that *Murphy* is questionable authority. Those cases do not support that suggestion. In *National Egg Co. v. Bank Leumi le-Israel B.M.,* 504 F.Supp. 305, 311 (N.D.Ga.1980), the court found *Murphy* "persuasive" but "not controlling." Nevertheless, the court found jurisdiction over a corporation whose only contact with the forum state was a single phone call.

In *Kolikof v. Samuelson,* 488 F.Supp. 881, 883 (D.Mass.1980), the court distinguished *Murphy* on the facts: whereas in *Murphy* it was necessary for the misleading statements to be sent across state lines and relied upon by the plaintiff, in *Kolikof* the tort was complete without the interstate communications. Here, as in *Murphy,* Vishay had to hear Delta misrepresent its identity and receive the other communications for the torts to occur.

The third case is *Weller v. Cromwell Oil Co.,* 504 F.2d 927 (6th Cir.1974). The issue in that case was whether individual officers of the defendant corporation were subject to personal jurisdiction in the forum state. The court distinguished *Murphy* wherein only the corporate defendant and no individual officers were subject to jurisdiction. *Margoles* was followed only for the proposition that the presence of the corporate defendant within the forum state does not alone subject the individual officers of that corporation to jurisdiction. 504 F.2d at 930–31.

Furthermore, contrary to Delta's assertions, the *Murphy* rationale has not been rejected by most courts. Rather, it more often has been followed. In *Ammon v. Kaplow,* 468 F.Supp. 1304 (D.Kan.1979), a single misleading advertisement received by the plaintiffs in Kansas was sufficient to subject the defendant to personal jurisdic-

tion in Kansas. *Murphy* was cited as authority. 468 F.Supp. at 1309. Similarly, in *Thorington v. Cash,* 494 F.2d 582 (5th Cir. 1974), personal jurisdiction was exercised over an out-of-state defendant whose only contacts with the forum state were phone and written communications to the in-state plaintiff. Again, *Murphy* was cited as authority. 494 F.2d at 587. *See also Brown v. Flowers Industries, Inc.,* 688 F.2d 328 (5th Cir.1982) (single defamatory phone call from out-of-state defendant; jurisdiction exercised); *J.E.M. Corporation v. McClellan,* 462 F.Supp. 1246 (D.Kan.1978) (single phone call from out-of-state defendant; jurisdiction exercised).

The second question raised by Vishay's arguments is whether the alleged abuse of process is "tortious conduct" occurring within North Carolina. In *Simon v. United States,* 644 F.2d 490 (5th Cir.1981), a Georgia defendant allegedly wrongfully induced the issuance by a Georgia court of a bench warrant for a Louisiana plaintiff. The warrant was served upon the plaintiff in Louisiana. The defendant had no other contacts with Louisiana. The Fifth Circuit allowed the Louisiana district court to exercise personal jurisdiction over the defendant under the "tortious conduct" provision of that state's long-arm statute. In *Hamilton, Miller, Hudson & Fayne Travel Corporation v. Hori,* 520 F.Supp. 67 (E.D.Mich.1981), a Michigan district court exercised jurisdiction over an Illinois defendant, who allegedly served abusive process on the plaintiff within Michigan. That process related to an earlier suit filed by defendant against plaintiff in Illinois. Jurisdiction was exercised under Michigan's "tortious conduct" long-arm provision. Thus, if an out-of-state defendant causes abusive process to be served upon an in-state plaintiff, and the plaintiff subsequently sues the defendant in plaintiff's state, the state wherein the alleged abusive process was served, on a cause of action arising out of such abusive service of process, personal jurisdiction exists over the out-of-state defendant. Delta is subject to North Carolina long-arm jurisdiction under this rule.

In summary, the district court erroneously concluded that § 55–145(a)(4) does not permit the exercise of personal jurisdiction over Delta. Delta's telephone and written communications with Vishay, which communications were essential to the unfair practices and contractual relations torts, were "tortious conduct" within North Carolina, even though Delta physically remained in California. Furthermore, the alleged abusive service of process on Vishay in North Carolina subjects Delta to personal jurisdiction in North Carolina on Vishay's action arising out of that service.

### 2. *N.C.Gen.Stat. § 1–75.4(4)(a)*

In order for § 1–75.4(4)(a) [3] to apply, Vishay must claim that it suffered an injury within North Carolina, which injury arose by Delta's acts outside the state, and must show that Delta solicited within North Carolina.

█ Vishay claims that it suffered injury in North Carolina, including loss of potential profits and damage to its business reputation, by reason of the alleged misrepresentations by Delta that occurred in communications with Vishay and in communications with Vishay's customers. Section 1–75.4(4)(a) requires the plaintiff only to claim injury, not to prove injury. In *Munchak Corp. v. Riko Enterprises, Inc.,* 368 F.Supp. 1366 (M.D.N.C.1973), section 1–75.4(4)(a) was satisfied where the plaintiff al-

---

**3.** N.C.Gen.Stat. § 1–75.4(4)(a) provides:
Personal jurisdiction, grounds for generally. —A court of this State having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to Rule 4(j) of the Rules of Civil Procedure under any of the following circumstances:

(4) Local Injury; Foreign Act.—In any action for wrongful death occurring within this State or in any action claiming injury to person or property within this State arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury either:
  (a) Solicitation or services activities were carried on within this State by or on behalf of the defendant . . . .

leged financial losses due to the defendant's tortious interference with contractual relations. That claim was sufficient for jurisdictional purposes and no inquiry was made regarding the speculative nature of the damages.

■ Vishay asserts that Delta was soliciting business within North Carolina through the telephone calls and mailing of the purchase order to Vishay, thereby seeking to have Vishay enter into a contract with Delta in North Carolina. In *Munchak,* the court found § 1–75.4(4)(a)'s "solicitation" requirement satisfied by the defendant's initiation, "with some expectation of future contract negotiations," of "preliminary contacts" with North Carolina basketball players. 368 F.Supp. at 1372. Delta's contacts were more contractual in their intent than were the "preliminary contacts" considered in *Munchak.* Delta need not be physically present in North Carolina to solicit in the state within the meaning of the statute. In *Federal Insurance Co. v. Piper Aircraft Corp.,* 341 F.Supp. 855, 857 (W.D. N.C.1972), aff'd, 473 F.2d 909 (4th Cir.1973), it was held that the out-of-state defendant's magazine ads within North Carolina satisfied the solicitation requirement of § 1–75.-4(4)(a). Delta's written communications, especially the mailing of the purchase order, and telephone conversations with Vishay satisfy the solicitation requirement.

Thus, the district court correctly concluded that § 1–75.4(4)(a) permits the exercise of personal jurisdiction over Delta.

## B. DUE PROCESS

In *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), the Supreme Court stated:

[D]ue process requires only that in order to subject defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." (citation omitted).

Subsequent cases have applied this standard on a case by case basis, determining what is fair, reasonable, and just according to the circumstances.

Delta places paramount importance on the dearth of its contacts with North Carolina. At most, Delta wrote three letters and initiated five telephone calls to Vishay. Delta neither maintained a place of business in North Carolina nor had an agent there. Delta has never entered into a contract with a North Carolina entity.

■ Such a quantitative analysis is inappropriate.[4] Delta initiated the contacts with Vishay in North Carolina. It intended both to inflict foreseeable injury upon Vishay such that Delta could reasonably expect answering to Vishay in North Carolina on claims arising out of those contacts, and to avail itself of the benefits and protections of North Carolina laws. In *Murphy,* the element of intent alone was enough to establish that the defendant availed itself of the privilege of the forum state's laws. The court stated that the element of intent "persuades us that there can be no constitutional objection to Massachusetts asserting jurisdiction over the out-of-state sender of a fraudulent misrepresentation for such a sender has thereby 'purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" 460 F.2d at 664 (citation omitted). *See also Brown v. Flowers Industries, Inc.,* 688 F.2d 328, 333 (5th Cir.1982) (quantitative analysis not determinative where nonresident defendant purposely avails himself of benefits of forum state).

---

4. In making its quantitative analysis, Delta relies on several North Carolina cases. Those cases are distinguishable from the situation here. In *H.V. Allen Co., Inc. v. Quip-Matic, Inc.,* 47 N.C.App. 40, 266 S.E.2d 768 (1980), the plaintiff initiated the contact with the defendant and defendant's few other contacts with North Carolina were totally unrelated to plaintiff and the cause of action. Similarly, in *Phoenix America Corp. v. Brissey,* 46 N.C.App. 527, 265 S.E.2d 476 (1980), the plaintiff initiated the contact with the out-of-state defendant, who had only one other unrelated contact with North Carolina.

Several other factors support personal jurisdiction. Delta's contacts with North Carolina are essential facts in Vishay's tort claims. In determining whether due process is satisfied, it is significant that the cause of action arises out of the defendant's contacts with the forum state. *See McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Edwards v. Associated Press,* 512 F.2d 258, 268 (5th Cir.1975).[5]

The interest of the forum state is a relevant factor in ascertaining whether the minimum contacts requirement is met. The interests of North Carolina in this action include: (1) plaintiff is a North Carolina resident; (2) plaintiff seeks relief under the North Carolina unfair trade practices statute; (3) the cause of action centers on the production of $130,000.00 worth of goods that would have been manufactured in North Carolina; and (4) Delta's contacts with North Carolina are essential elements of Vishay's claims.

In *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980), the Supreme Court indicated that another factor is whether the defendant's conduct in the forum state causes him reasonably to expect being haled into that state's courts. If Vishay's allegations are correct, Delta committed tortious conduct within North Carolina by intentionally deceiving Vishay into divulging domestic price information and abusively causing process to be served on Vishay. As such, Delta reasonably should expect to be haled before the North Carolina courts.

Another factor is the convenience of the parties. Vishay's offices and business records are in North Carolina. Seven Vishay employees who are witnesses to the contested series of events are in North Carolina. While the defendant's witnesses are located in California, since Delta initiated the contested series of events, its inconvenience in transporting those witnesses to North Caro-

lina when weighed against the inconvenience that would result to Vishay if it had to file suit in California, does not result in a denial of due process.

Thus, the district court incorrectly held that subjecting Delta to personal jurisdiction would violate due process.

### III.

For the foregoing reasons, we reverse the dismissal by the district court and remand for further proceedings.

REVERSED AND REMANDED.

---

5. Delta relies on *Bryson v. Northlake Hilton,* 407 F.Supp. 73 (M.D.N.C.1976), *Putnam v. Triangle Publications, Inc.,* 245 N.C. 432, 96 S.E.2d 445 (1957), and *Munchak.* In those cases, however, the defendant's contacts with North Carolina were not associated with the causes of action.