**David E. GEORGE, Plaintiff,**

v.

**Reece Nelson McCLURE, Defendant.**

**No. Civ. 100CV00952.**

United States District Court, M.D. North Carolina.

June 5, 2001.

---

Ellis B. Drew, III, Wells Jenkins Lucas & Jenkins, Winston–Salem, NC, for Plaintiff.

Amiel J. Rossabi, Forman Rossabi Black, P.A., Gregory Arthur Wendling, Greensboro, NC, for Defendant.

*MEMORANDUM OPINION*

BULLOCK, District Judge.

This matter is before the court on Defendant Reece Nelson McClure's motion to dismiss Plaintiff David E. George's complaint. Plaintiff alleges claims for relief based on fraud, rescission, unjust enrichment, conversion, unfair and deceptive trade practices, breach of fiduciary duty, constructive trust, and accounting. Plaintiff's motion to disqualify Defendant's counsel is also before the court. For the following reasons, Defendant's motion to dismiss will be denied and Plaintiff's motion to disqualify Defendant's counsel will be granted.

## FACTS

Because this matter is before the court on a motion to dismiss, the Plaintiff's version of the facts contained in the complaint will be taken as true despite Defendant's denial of many of Plaintiff's assertions. Plaintiff and Defendant were partners in an interior design business, Reece N. McClure Interior Design. Plaintiff and Defendant shared responsibilities for design decisions and the operation of the business. The business thrived and began receiving commercial design projects which were especially profitable. In the middle of 1992 and early 1993 Thomas Sandefur, Chief Executive Officer of Brown & Williamson Tobacco Company, consulted with Plaintiff and Defendant regarding a redesign and redecoration of the Brown & Williamson home headquarters in Louisville, Kentucky. The initial projected cost for the first phase of the project, the executive 26th floor, was $2,000,000.00. A deposit was received by Plaintiff on April 24, 1993, for $1,000,000.00 and was placed in Reece N. McClure Interior Design's account in Winston–Salem, North Carolina.

About this time, Defendant formed a new corporation called Environmental Productions, Inc. Plaintiff believes that this corporation is a sham corporation used in part to defraud Plaintiff by serving as a receptacle for payments funneled from the Brown & Williams job. At this point, the personal relationship between Plaintiff and Defendant began to deteriorate and Defendant allegedly began siphoning partnership funds. Defendant became involved with Brian Peele, who allegedly participated in the scheme to defraud Plaintiff.

Plaintiff subsequently brought suit against McClure and Peele in Forsyth County Superior Court designated as *David E. George v. Reece Nelson McClure and Robert Brian Peele, 94Cvs 1214* (hereinafter the "Lawsuit"). On November 3, 1994, Sandefur and his wife, Crawford Sandefur, filed affidavits in the Lawsuit stating that the Brown & Williamson job had been terminated and that Environmental Productions, Inc., had been hired to finish limited work on the 26th floor. In November 1994, Defendant testified in a video deposition for that case that the Brown & Williamson project had been cancelled.

All three parties to the Lawsuit met for a mediated settlement conference at which time Defendant allegedly represented the following facts: (1) the Brown & Williamson job had been cancelled; (2) Environmental Productions, Inc., was going to finish the job, greatly reduced in scope, realizing no profits; (3) after the small amount of work left for Brown & Williamson was complete, there would be no further work or economic opportunity with the Brown & Williamson project; (4) McClure had no money, the $1,000,000.00 deposit for the Brown & Williamson job and over $1,000,000.00 of accumulated shared assets had been spent; (5) Plaintiff should immediately settle the Lawsuit for a small amount because that was all Defendant could pay; if Plaintiff did not settle at this time there may be no money in the future, and Plaintiff might even have to help refund monies paid by Brown & Williamson; and (6) the mediated settlement agreement had to state that no partnership ever existed for Defendant's tax purposes only.

Plaintiff claims that he believed these representations at the time they were made, in part because he had witnessed lavish spending by Defendant and Peele. Plaintiff now claims that the Sandefurs' affidavits were false and that McClure's attorney in the Lawsuit, the same attorney representing Defendant in the present case, knew that he was procuring false affidavits. Plaintiff claims that he relied on these false statements when he entered the settlement agreement.

Subsequently, Plaintiff discovered that Defendant's statements as well as those made by the Sandefurs and Defendant's attorney were false. The Brown & Williamson project had not been cancelled and Defendant reaped millions of dollars in profits from that job. Apparently, as with Plaintiff and Defendant, Peele's relationship with Defendant had deteriorated. Plaintiff learned that Peele had filed a lawsuit against McClure in California. Through discovery Peele obtained financial documents allegedly showing that McClure had received millions of dollars from Brown & Williamson after testifying in his deposition for the Lawsuit that the project was cancelled. Peele also provided a sworn statement detailing the fraudulent scheme in which Defendant enlisted Peele to participate.

As a result of Plaintiff's discoveries regarding the alleged false representations made at the settlement conference for the Lawsuit, upon which Plaintiff relied in en-

tering the settlement, Plaintiff has brought this action.

## DISCUSSION

Defendant has moved for dismissal of Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (6). Although both parties have attached voluminous documents to their briefs, the court will limit its review to the pleadings because this matter is before the court on a motion to dismiss. Also before the court is Plaintiff's motion to disqualify Defendant's counsel.

■ The burden of proving subject matter jurisdiction is on the plaintiff. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991). Under Rule 12(b)(1), the moving party "should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* Plaintiff alleges that this court has proper subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff contends that he is a resident of North Carolina and that Defendant is a resident of Florida and that the amount in controversy exceeds $75,000.00. Defendant concedes diversity of the parties but argues that "the claim does not *in good faith* meet the jurisdictional [sic] required $75,000.00 because Plaintiff does not have a claim whatsoever presented 'in good faith.' " (Def.'s Br. in Support of Mot. to Dismiss at 5). Clearly the jurisdictional fact of the amount in controversy is in dispute. Because Plaintiff claims damages of over $75,000.00 on numerous counts and alleges facts that provide a basis for millions of dollars in damages, Plaintiff has satisfied the jurisdictional amount required in a diversity case under 28 U.S.C. § 1332,

and this court has proper subject matter jurisdiction.

■ To determine whether the court has personal jurisdiction over Defendant pursuant to Federal Rule of Civil Procedure 12(b)(2), the court must conduct a two-part inquiry. First, it must be determined whether the statutes of North Carolina permit the exercise of jurisdiction and, second, whether exercising jurisdiction over Defendant violates due process of law. *Vishay Intertechnology, Inc. v. Delta Int'l Corp.,* 696 F.2d 1062, 1064 (4th Cir. 1982). The North Carolina long-arm statute specifically provides that North Carolina jurisdiction is proper when a party has contracted to deliver within North Carolina something of value to the plaintiff. N.C. Gen.Stat. § 1–75.4(5)(c). The North Carolina long-arm statute should be given a liberal construction providing North Carolina courts the full jurisdictional power permitted under federal due process.[1] N.C. Gen.Stat. § 1–75.4; *Vishay,* 696 F.2d at 1065; *Dillon v. Numismatic Funding Corp.,* 291 N.C. 674, 231 S.E.2d 629, 630 (1977).

■ It is well settled that a non-resident defendant must have sufficient "minimum contacts" with the forum state for a court to exercise personal jurisdiction over that defendant in accordance with due process of law. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Defendant argues that these minimum contacts are lacking because the fact that he is president and sole shareholder of a North Carolina corporation is not sufficient to satisfy notions of fair play and substantial justice. He also contends that North Carolina lacks an interest and notes the "bogus nature of

---

1. Defendant does not contest that the North Carolina long-arm statute permits the exercise of jurisdiction. Defendant argues instead that he does not have sufficient minimum contacts with North Carolina to satisfy due process considerations.

Plaintiff's Complaint." Defendant does not address the fact that the gravamen of this case is fraud perpetrated in the mediated settlement agreement in connection with a lawsuit in a North Carolina court. Defendant was a resident of North Carolina for over twenty-five years. The underlying Lawsuit was based on business transactions entered into by Defendant's North Carolina business. Most of the alleged fraudulent statements were made in North Carolina. The settlement agreement was entered in North Carolina. It does not offend notions of fair play and substantial justice to exercise jurisdiction over a non-resident when that person allegedly made misrepresentations in this state in connection with a lawsuit in this state. Defendant has sufficient minimum contacts with North Carolina for this court to exercise personal jurisdiction in accordance with due process of law.

Dismissal under Rule 12(b)(6) is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, the court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993). " 'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Revene v. Charles County Comm'rs,* 882 F.2d 870, 872 (4th Cir.1989) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

The facts in this case are contentiously disputed even at this early stage. Defendant has provided extensive documentation of the Lawsuit that goes far beyond the scope of a motion to dismiss. Defendant

essentially argues that Plaintiff does not state a claim upon which relief may be granted because (1) the mediated settlement agreement contains a general release and a clause that states that the parties were not relying on representations made in connection with reaching the settlement, (2) the Lawsuit was voluntarily dismissed with prejudice, (3) the statute of limitations has expired for Plaintiff's claims, and (4) Plaintiff cannot show reasonable reliance.

■ The fact that the mediated settlement agreement contains a general release and a clause that states that the parties were not relying on representations made in connection with reaching the settlement does not bar an action brought on grounds of fraud in the inducement. A settlement agreement is in essence a contract, and as such requires a meeting of the minds. If a settlement agreement is procured by fraud the requisite meeting of the minds is absent. *See Creech v. Melnik,* 347 N.C. 520, 527, 495 S.E.2d 907, 911–12 (1998). Despite Defendant's argument to the contrary, "the parol evidence rule does not ... preclude admission of extrinsic evidence when one of the parties seeks to prove that a written agreement was executed under circumstances amounting to fraud." *Cunningham v. Brown,* 51 N.C.App. 264, 270, 276 S.E.2d 718, 724 (1981).

■ Further, "a release is subject to avoidance by a showing that its execution resulted from fraud or mutual mistake." *Sykes v. Keiltex Indus., Inc.,* 123 N.C.App. 482, 485, 473 S.E.2d 341, 344 (1996) (citing *Cunningham v. Brown,* 51 N.C.App. at 269, 276 S.E.2d at 723). As a general principle, "fraud destroys the validity of everything into which it enters, and ... vitiates the most solemn contracts, documents, and even judgments." 37 Am. Jur.2d Fraud and Deceit § 8 (1968).

Plaintiff's complaint properly states a claim for fraud. The complaint alleges with specificity the statements upon which Plaintiff relied, that these alleged false representations were made with intent to deceive Plaintiff, and that Plaintiff reasonably relied on these misrepresentations.

The three-year statute of limitations for an action grounded in fraud does not run until the party bringing the action is aware of the fraud or should have been aware of the fraud. *B–W Acceptance Corp. v. Spencer,* 268 N.C. 1, 7, 149 S.E.2d 570, 575 (1966). This is a factual determination that is not appropriate to rule on at this time. Likewise, Plaintiff clearly pleads reliance on alleged misrepresentations made with regard to the settlement agreement. (Compl.¶¶ 21–24, 37–41, 43). Whether Plaintiff did in fact rely on these statements and whether such reliance was reasonable are questions of fact. *See Massey v. Duke Univ.,* 130 N.C.App. 461, 466, 503 S.E.2d 155, 159 (1998).

Because this action will not be dismissed on Defendant's motion, it next must be determined if Defendant's counsel should be disqualified. "Disqualification is a serious matter which cannot be based on imagined scenarios of conflict, and the moving party has a high standard of proof to meet in order to prove that counsel should be disqualified." *Plant Genetic Sys., N.V. v. Ciba Seeds,* 933 F.Supp. 514, 517 (M.D.N.C.1996). The Fourth Circuit has cautioned against overly mechanical application of disciplinary canons at the expense of litigants' rights to choose their counsel. *Shaffer v. Farm Fresh, Inc.,* 966 F.2d 142, 146 (4th Cir.), *cert. denied,* 506 U.S. 1021, 113 S.Ct. 657, 121 L.Ed.2d 583 (1992). In a close case, however, the court should resolve all doubts in favor of disqualification. *Rogers v. Pittston Co.,* 800 F.Supp. 350, 353 (W.D.Va.1992), *aff'd,* 996 F.2d 1212 (4th Cir.1993).

Defendant's counsel in the present action, Gregory A. Wendling, was also Defendant's counsel in the Lawsuit that resulted in the disputed settlement agreement. Wendling was involved in the settlement process and allegedly was aware of misrepresentations made by others and made misrepresentations himself in that context. According to the North Carolina Revised Rules of Professional Conduct, "If the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice." Rule 1.7, comment 6. Rule 3.7 of the North Carolina Revised Rules of Professional Conduct also provides:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

Wendling will most likely be a material witness regarding the issues at the heart of this action given the allegations of his participation in the Lawsuit and the resulting settlement agreement. Discovery has not commenced, and a pretrial conference has not yet been scheduled. The issues in this case are not such that Wendling is the only attorney competent to proceed in this action. Therefore, disqualification is not prejudicial to Defendant.

### CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss will be denied and Plaintiff's motion to disqualify Defendant's counsel will be granted.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.