**TRIAD MOTORSPORTS, LLC, Plaintiff,**

v.

**PHARBCO MARKETING GROUP, INC., Defendant.**

No. Civ. 1:99CV00275.

United States District Court, M.D. North Carolina.

Jan. 20, 2000.

Daniel R. Johnston, Parrish Newton & Rabil, L.L.P., Winston–Salem, NC, Carl F. Parrish, Parrish Newton & Rabil, L.L.P.,

Winston–Salem, NC, for Triad Motorsports, LLC, plaintiff.

Edward F. Hennessey, IV, Robinson, Bradshaw & Hinson, P.A., Charlotte, NC, for Pharbco Marketing Group, Inc., defendant.

## MEMORANDUM OPINION

BULLOCK, District Judge.

This action is before the court on Plaintiff Triad Motorsports' motion to remand and on Defendant Pharbco Marketing Group's motion to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and, in the alternative, motion to dismiss Plaintiff's second, third, and fourth claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. This action began when Plaintiff filed suit against Defendant in the General Court of Justice, Superior Court Division, Forsyth County, North Carolina. Defendant removed this action to federal court on April 7, 1999, alleging federal diversity jurisdiction. Thereafter, on April 14, 1999, Defendant filed a motion to dismiss for lack of personal jurisdiction and, in the alternative, a motion to dismiss three of Plaintiff's four claims for failure to state a claim upon which relief can be granted. On April 28, 1999, Plaintiff moved to remand the case to state court on the ground that Defendant failed to file its notice of removal within the time limit set forth in 28 U.S.C. § 1446(b). For the reasons set forth below, the court will deny Plaintiff's motion to remand. In addition, the court will deny Defendant's motion to dismiss this action for lack of personal jurisdiction as well as Defendant's motion to dismiss Plaintiff's second, third, and fourth claims for failure to state a claim upon which relief can be granted.

## FACTS

Plaintiff is a limited liability company organized under the laws of the North Carolina, with its principal place of business in Thomasville, North Carolina. Defendant is a Delaware corporation with its principal place of business in Santa Rosa, California. This matter arises out of Plaintiff's claim that Defendant allegedly breached a written agreement to co-sponsor Plaintiff's racing operation for the 1999 National Association of Stock Car Auto Racing ("NASCAR") season.

In the fall of 1998, Plaintiff and Defendant entered into discussions relating to establishing a sponsorship contract under which Defendant would provide funds to Plaintiff and Plaintiff would provide, in addition to other services and benefits to Defendant, advertising space on its race cars and race equipment. During the course of these discussions, Plaintiff and Defendant negotiated via the telephone, as well as exchanged documents and communications via electronic mail. On January 16, 1999, Mark DeMattei ("DeMattei"), Defendant's president and chairman, visited Winston–Salem, North Carolina, to attend the Winston Cup Preview. The Winston Cup Preview is a charity benefit held in Winston–Salem, North Carolina, during which teams participating in the NASCAR Winston Cup racing circuit exhibit their cars to the public and to the press. One purpose of the Winston Cup Preview is to announce sponsorships, team alliances, and to otherwise generate publicity for race teams and team sponsors. While at the Winston Cup Preview, DeMattei participated in a press conference during which he discussed the Defendant's 1999 sponsorship of the Plaintiff's racing operation. In addition, the Defendant's name and logo were affixed to the Plaintiff's race car which was on display at the Winston Cup Preview. While in North Carolina, DeMattei visited the headquarters of Plaintiff's racing operation and discussed the parties' respective obligations under the alleged contract.

Plaintiff contends that on or about January 15, 1999, Plaintiff and Defendant entered into a written contract, contingent

upon approval by Defendant's board of directors, regarding Defendant's sponsorship of Plaintiff's racing operation (the "Sponsorship Agreement"). Thereafter, Plaintiff asserts, on January 24, 1999, DeMattei informed Plaintiff that Defendant's board of directors had approved the Sponsorship Agreement. Defendant, on the other hand, contends that its board of directors did not approve the Sponsorship Agreement. According to Defendant, its board of directors approved a different, revised sponsorship agreement (the "Revised Agreement") and submitted the Revised Agreement to Plaintiff. Thereafter, Defendant contends, Plaintiff never returned an executed copy of the Revised Agreement and negotiations ceased between the parties.

Plaintiff filed this action on March 2, 1999, in the Superior Court of Forsyth County, North Carolina. The complaint and summons were sent via certified mail, return receipt requested, to "Mark DeMattei, President and Chairman of Pharbco Marketing Group, Inc., 3554 Round Barn Boulevard, Suite 204, Santa Rosa, California, 95403." (*See* Br. in Supp. of Pl.' Mot. to Remand Ex. A). The certified mail envelope was received at that address on March 5, 1999.

Two businesses occupy the office space at 3554 Round Barn Boulevard: the Defendant and the law firm of Kohut & Kohut, L.L.P. Defendant has only two employees, and neither employee was in the office on March 5, 1999. Because nobody from Defendant's office was available to accept delivery of the certified mail envelope, Carrie Foster ("Foster"), a paralegal with the law firm which shares the 3554 Round Barn Boulevard address with Defendant, signed for the certified mail envelope containing the summons and complaint. DeMattei received the copy of the summons and complaint on March 9, 1999.

On April 7, 1999, Defendant filed a notice of removal of civil action pursuant to 28 U.S.C. § 1441, which alleged this court had original jurisdiction pursuant to 28 U.S.C. § 1332. On April 14, 1999, Defendant filed a motion to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and, in the alternative, motion to dismiss Plaintiff's second, third, and fourth claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Thereafter, on April 28, 1999, Plaintiff moved to remand this matter to state court on the grounds that the notice of removal was not filed within the thirty-day removal period set forth in 28 U.S.C. § 1446(b).

## DISCUSSION

### I. *Plaintiff's Motion to Remand*

 Section 1441(a) of Title 28 permits a defendant to remove from state to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Defendant's notice of removal alleges that this court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).[1] The first requirement of diversity jurisdiction under 28 U.S.C. § 1332(a)(1) is complete diversity of state citizenship between plaintiff and defendant. *See Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), and *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). The second requirement of diversity jurisdiction under 28 U.S.C. § 1332(a)(1) is that the matter in controversy must exceed $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a)(1).

---

**1.** Section 1332(a)(1) of Title 28 vests district courts of the United States with original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states." 28 U.S.C. § 1332(a)(1).

For purposes of diversity jurisdiction, Section 1332(c)(1) of Title 28 states, "[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business...." 28 U.S.C. § 1332(c)(1). In this case, Defendant is a Delaware corporation with its principal place of business in California.

Plaintiff is a limited liability company organized under the laws of North Carolina. Federal courts considering the issue have held that the citizenship of a limited liability company for diversity purposes is determined by the citizenship of each and all its members. *See Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir.1998) ("The citizenship of an LLC for purposes of ... diversity jurisdiction is the citizenship of its members."). All of Plaintiff's members are citizens of either North Carolina or Louisiana. Because complete diversity of citizenship exists in this case, and the matter in controversy is alleged to exceed $75,000.00 exclusive of interest and costs, this court has original jurisdiction over this action pursuant to the provisions of 28 U.S.C. § 1332(a)(1).

■ Pursuant to 28 U.S.C. § 1446(a), the Defendant must file "a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). Section 1446(b) of Title 28 requires the notice of removal to "be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief." 28 U.S.C. § 1446(b).

Plaintiff contends that Defendant was properly served pursuant to North Carolina Rule of Civil Procedure 4(j)(6) and that service of process was complete when the summons and complaint were signed for on March 5, 1999. Therefore, Plaintiff asserts, the thirty-day removal period expired on April 5, 1999.[2] Consequently, Plaintiff argues, because Defendant's notice of removal was filed on April 7, 1999, thirty-three days after allegedly proper service of process, this action was improvidently removed and should be remanded to state court.

Defendant relies on *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999), and argues that, because no agent or officer of Defendant was properly served with a copy of the summons and complaint in accordance with North Carolina Rule of Civil Procedure 4(j)(6), the thirty-day removal period was never triggered. Consequently, Defendant argues, its notice of removal was timely filed on April 7, 1999.

In *Murphy Bros.*, the Supreme Court stated that the requirement that a defendant be brought into litigation by official service is the contemporary counterpart to the common law writ of *capias ad respondendum*, which directed the sheriff to secure the defendant's appearance by taking him into custody. *Murphy Bros.*, 526 U.S. at 348–49, 119 S.Ct. at 1326–27. The Supreme Court further emphasized that "in the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Id.* at 350–51, 119 S.Ct. at 1327. Therefore, "one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.*

In *Murphy Bros.*, the Supreme Court observed that the various state provisions for service of the summons and the filing or service of the complaint fit into one of four main categories. *See id.* at 352–56, 119 S.Ct. at 1328–29. In each of the four categories, a defendant's period for removal is to be no less than thirty days from

---

**2.** Thirty days after March 5, 1999, is actually Sunday, April 4, 1999. Therefore, the deadline for removal expired on Monday, April 5, 1999. *See* Fed.R.Civ.P. 6(a).

service of process. *Id.* at 353–54, 119 S.Ct. at 1328.[3]

In this case, Plaintiff attempted service of process pursuant to North Carolina Rule of Civil Procedure 4(j)(6). Rule 4(j)(6)(c) permits service of process on a foreign corporation "[b]y mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the officer, director or agent to be served as specified in paragraphs a and b." N.C.R.Civ.P. 4(j)(6)(c).

The complaint and summons were sent via certified mail, return receipt requested, to Mark DeMattei, president and chairman of Pharbco Marketing Group, Inc., at 3554 Round Barn Boulevard, Suite 204, Santa Rosa, California, 95403, and received at that address on March 5, 1999. Carrie Foster, a paralegal for the law firm which shares the 3554 Round Barn Boulevard building address with the Defendant, signed for the certified mail envelope containing the summons and complaint. Defendant's president and chairman of marketing received the summons and complaint on March 9, 1999. Thereafter, Plaintiff's counsel filed an affidavit of service pursuant to North Carolina General Statute Section 1–75.10(4), averring that a copy of the summons and complaint was deposited in the Post Office for mailing by certified mail, return receipt requested, and addressed to the president and chairman of Pharbco Marketing Group, Inc.

The affidavit of service filed by Plaintiff together with the signed return receipt by Foster established a rebuttable presumption that Foster acted as an agent for Defendant and was authorized to receive and sign for certified mail. *See*

N.C.R.Civ.P. 4(j2)(2); *see also Fender v. Deaton,* 130 N.C.App. 657, 663, 503 S.E.2d 707, 710 (1998) (finding that the affidavit filed by the plaintiff together with the return receipt signed by someone other than the defendant established a presumption that the signer acted as defendant's agent in receiving and signing for the certified mail), *disc. review denied,* 350 N.C. 94, 527 S.E.2d 666 (1999). In her affidavit, Foster verifies that she signed for the certified mail, but states:

> I have never worked for, been an agent of, or had any relationship with [Defendant]. I was not authorized by appointment or by law to be served or to accept service of process for [Defendant]. I have never signed for certified or registered mail for [Defendant] other than on March 5, 1999.

(Carrie Foster Aff. ¶ 2). In addition, Defendant's president and chairman avers:

> Carrie Foster has never worked for, was never an agent of, and has never had any relationship with [Defendant]. Ms. Foster was not authorized by appointment or by law to be served or to accept service of process for [Defendant]. Ms. Foster was not authorized to sign for registered or certified mail for [Defendant] or me.

(DeMattei Second Decl. ¶ 5). Plaintiff offered no evidence to contradict Defendant's affidavits.

Defendant has rebutted the presumption that Plaintiff's attempted service was proper under North Carolina Rule of Civil Procedure 4(j)(6)(c). *See Tinkham v. Hall,* 47 N.C.App. 651, 653, 267 S.E.2d 588, 590 (1980) (holding that attempted service of process upon defendant corporation by de-

---

**3.** In *Murphy Bros.,* the Supreme Court rejected the "receipt rule." The "receipt rule" embodied the notion that the removal period under Section 1446(b) began to run on receipt of a copy of the complaint, however informally, despite the absence of any formal service of process. *Murphy Bros.,* 526 U.S. at 355, 119 S.Ct. at 1329. In rejecting the "receipt rule," the Supreme Court cited two low-

er federal court decisions for the proposition that the removal period begins only upon proper service of process. *See id.* at 349, 119 S.Ct. at 1326 n. 2 (citing *Bowman v. Weeks Marine, Inc.,* 936 F.Supp. 329, 343 (D.S.C. 1996), and *Estate of Baratt v. Phoenix Mut. Life Ins. Co.,* 787 F.Supp. 333, 336 (W.D.N.Y. 1992)).

livering copies of summons and complaint to individual who at that time was neither an agent of the defendant corporation nor authorized to receive service of process on its behalf was insufficient). Defendant was not effectively served with process on March 5, 1999, and the period for removal began, if at all, when the summons and the complaint were delivered to Defendant's president on March 9, 1999. Defendant's notice of removal filed on April 7, 1999, is timely, and Plaintiff's motion to remand will be denied.

## II. *Defendant's Motion to Dismiss for Lack of Personal Jurisdiction*

Defendant requests this action be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Plaintiff bears the ultimate burden of proof that personal jurisdiction is proper by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989). However, when the court examines this issue only on the basis of the motions, legal memoranda, and the allegations of the complaint, Plaintiff need make only a *prima facie* showing of personal jurisdiction. *See Crown Cork & Seal Co., Inc. v. Dockery*, 886 F.Supp. 1253, 1256 (M.D.N.C.1995). In deciding whether Plaintiff has made a *prima facie* showing, the court must construe all relevant pleading allegations in the light most favorable to the Plaintiff, resolve all factual disputes in the Plaintiff's favor, and draw the most favorable inferences for the existence of jurisdiction. *See id.*

To determine whether personal jurisdiction is proper, the court must engage in a two-part inquiry. First, the long-arm statute of North Carolina must provide a statutory basis for the assertion of personal jurisdiction and, second, the exercise of personal jurisdiction must comply with the due process clause of the Fourteenth Amendment to the United States Constitution. *Vishay Intertechnology, Inc. v. Delta Int'l Corp.*, 696 F.2d 1062, 1064 (4th Cir.1982).

## A. *The Long–Arm Statute*

In this case, the North Carolina long-arm statute defines the parameters of proper personal jurisdiction. *See* N.C.Gen.Stat. § 1–75.4. The provisions of this statute are to "be given a liberal construction, making available to the North Carolina courts 'the full jurisdictional powers permissible under federal due process.'" *Vishay Intertechnology*, 696 F.2d at 1065 (quoting *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977)). The long-arm statute provides, in pertinent part, that North Carolina courts have jurisdiction over any action which: "Arises out of a promise, made anywhere to the plaintiff ... by the defendant ... to pay for services to be performed in this State by the plaintiff." N.C.Gen.Stat. § 1–75.4(5)(a).

Plaintiff's complaint alleges that the parties entered into a contract whereby Plaintiff promised to provide: (1) prominent position for Defendant's name and logo on Plaintiff's race cars, show cars, transporter, support vehicles, and crew uniforms; (2) preeminent mention of Defendant's name and logo in any publicity matter associated with Plaintiff's racing team; and (3) other services and benefits to Defendant. (*See* Pl.'s Compl. ¶¶ 9–15 and Ex. A ¶ 1(a)). In return, Plaintiff alleges, Defendant promised to pay $1,700,000.00 to Plaintiff. Plaintiff's race cars are built and prepared for racing by Plaintiff at its Thomasville, North Carolina, facility. Part of the race car preparation process and part of the Plaintiff's performance under the alleged contract included applying Defendant's name and logo to Plaintiff's race cars and equipment at the Thomasville, North Carolina, facility. One of Plaintiff's race cars, which was built and prepared for racing at the Thomasville, North Carolina, facility, was on exhibit at the 1999 Winston Cup Preview with Defendant's name and logo prominently displayed. Because Defendant promised to pay for services to be per-

formed by Plaintiff in North Carolina, *i.e.*, the application and display of Defendant's name and logo on Plaintiff's race cars and related equipment, North Carolina General Statute Section 1–75.4(5)(a) authorizes the assertion of personal jurisdiction over the Defendant in this case.[4]

### B. *Due Process*

■■■ The due process stage of the personal jurisdiction analysis requires the existence of "certain minimum contacts [between the non-resident defendant and the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). When examining the sufficiency of a non-resident Defendant's contacts, "[t]he touchstone of the minimum contacts analysis remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state." *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir.1994) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). In short, jurisdiction is proper when a relationship exists between the defendant and the forum "such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In *Lesnick*, the Fourth Circuit articulated a two-part test to be applied when determining whether the requirements of due process are satisfied. Under this test, the court should consider whether:

> (1) the defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state; and (2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice, taking into account such factors as (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversy as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies.

*Lesnick*, 35 F.3d at 945–46.

Plaintiff asserts that Defendant purposefully directed its conduct toward North Carolina and generated sufficient minimum contacts to support the assertion of specific personal jurisdiction in this case.[5] An analysis of the Defendant's contacts with North Carolina compels the conclusion that Defendant possessed sufficient minimum contacts with North Carolina to permit this court to exercise personal jurisdiction over Defendant.

---

4. The North Carolina long-arm statute also permits North Carolina courts to assert personal jurisdiction over any action which: "Arises out of a promise, made anywhere to the plaintiff ... by the defendant to deliver ... within this State ... things of value." N.C.Gen.Stat. § 1–75.4(5)(c). North Carolina courts have held that money payments are a "thing of value" within the meaning of North Carolina General Statute Section 1–75.4(5)(c). *See Pope v. Pope*, 38 N.C.App. 328, 331, 248 S.E.2d 260, 262 (1978). In this case, Plaintiff alleges that Defendant promised to submit payments to Plaintiff in North Carolina. (*See* Compl. ¶ 13). Thus, the court finds Section 1–75.4(5)(c) provides an alternative statutory basis for the assertion of personal jurisdiction over the Defendant in this case.

5. Personal jurisdiction may be found on either of two theories: general jurisdiction or specific jurisdiction. General jurisdiction exists where the suit does not arise out of the defendant's activities in the forum state, but the defendant maintains "continuous and systematic" contacts with the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Specific jurisdiction exists when a state asserts personal jurisdiction over a defendant in a suit "arising out of or related to" that defendant's contacts with the state. *See Helicopteros*, 466 U.S. at 414 n. 8, 104 S.Ct. 1868. Here, Plaintiff's claims against Defendant arise out of or relate to the Defendant's contacts with North Carolina.

First, the alleged agreement clearly indicated that Plaintiff was a limited liability company formed under the laws of North Carolina with its principal office in Thomasville, North Carolina. Second, Defendant, with knowledge that Plaintiff was based in North Carolina, negotiated and communicated with Plaintiff regarding the alleged contract via the telephone and electronic mail. Third, pursuant to the alleged agreement, the relationship between Plaintiff and Defendant was to be an extended commercial relationship. According to the alleged agreement, Plaintiff was required to perform its obligations for the duration of the 1999 NASCAR racing season and the Defendant was required to submit monthly payments from January 1999 to July 1999 totaling $1,700,000.00. In addition, the alleged contract provided a renewal option for the Defendant. Fourth, Defendant's president traveled to North Carolina and participated in a media event created to publicize, among other things, Defendant's alleged commercial sponsorship of Plaintiff's NASCAR racing team for the 1999 racing season. During this visit to North Carolina, Defendant's president allegedly visited Plaintiff's Thomasville, North Carolina, headquarters and discussed the parties' obligations under the alleged contract.

In this case, Defendant engaged in purposeful actions directed at North Carolina in an effort to forge a marketing relationship with Plaintiff. Defendant's contacts with North Carolina are not so isolated or attenuated that the exercise of personal jurisdiction would offend due process. *See, e.g., Chung v. NANA Dev. Corp.*, 783 F.2d 1124, 1129 (4th Cir.1986) (holding that a single unsolicited sale of reindeer antlers to a Virginia resident in Alaska by an Alaskan seller did not constitute minimum contacts with Virginia and could not satisfy due process). As a result of its actions relating to the alleged commercial relationship, Defendant should reasonably have anticipated being haled into court in North Carolina in the event that a legal dispute arose relating to the relationship

between Plaintiff and Defendant. *See Capstar Corp. v. Pristine Indus., Inc.*, 768 F.Supp. 518, 524 (W.D.N.C.1991) (holding that telephone calls and fax transmissions in relation to the contract at issue along with a visit by the defendant's president to plaintiff's production facility were sufficient minimum contacts with North Carolina to justify the assertion of personal jurisdiction).

■ Although Defendant had sufficient minimum contacts with North Carolina to support jurisdiction, the exercise of personal jurisdiction must also be consistent with " 'fair play and substantial justice.' " *First Am. First, Inc. v. National Ass'n of Bank Women*, 802 F.2d 1511, 1517 (4th Cir.1986) (quoting *Burger King*, 471 U.S. at 486, 105 S.Ct. 2174). In analyzing the fundamental fairness issue, the court must examine five factors: (1) the burden on the Defendant; (2) the interests of the forum state; (3) the Plaintiff's interest in obtaining relief; (4) the efficient resolution of controversies as between states; and (5) the shared interests of the several states in furthering fundamental substantive social policies. *See Lesnick*, 35 F.3d at 946.

■ Defendant contends that the burden of litigating this matter in North Carolina does not comport with notions of fair play and substantial justice. Although litigating this matter in North Carolina may place a burden on Defendant, the other relevant factors outweigh any burden Defendant will face upon litigation of this matter in North Carolina. For example, North Carolina, as the forum state in a general sense, has a "manifest interest in providing effective means of redress for its residents." *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In addition, Plaintiff, a limited liability company with its principal place of business in North Carolina, has a significant interest in obtaining relief in North Carolina. As for the efficient resolution of controversies and the shared interests of the states involved, the court

finds that in view of this court's limited civil backlog it is efficient to litigate this matter in North Carolina and that no fundamental social policy is impacted by litigating this matter here. After considering all the relevant factors, the exercise of jurisdiction over the Defendant by this court comports with " 'fair play and substantial justice.' " *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174 (quoting *International Shoe,* 326 U.S. at 320, 66 S.Ct. 154). Thus, the motion to dismiss for lack of personal jurisdiction over Defendant will be denied.[6]

III. *Defendant's Motion to Dismiss Plaintiff's Second, Third, and Fourth Claims for Relief*

Defendant asks this court to dismiss Plaintiff's second claim for detrimental reliance, Plaintiff's third claim for consequential damages, and Plaintiff's fourth claim for loss of reputation on the grounds that these claims fail to state a claim upon which relief may be granted. Plaintiff argues that, having stated a claim for breach of contract in its first claim for relief, it pled detrimental reliance, consequential damages, and loss of reputation not as independent claims, but to provide Defendant notice of the extent and character of Plaintiff's claims for special damages against Defendant. Plaintiff has adequately alleged special damages and the court will not dismiss Plaintiff's claim to them. *See* Fed.R.Civ.P. 9(g) (requiring that when special damages are claimed they must be specifically stated).

CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand will be denied, Defendant's motion to dismiss for lack of personal jurisdiction will be denied, and Defendant's alternative motion to dismiss for

failure to state a claim upon which relief can be granted will be denied.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

*ORDER*

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Plaintiff's motion to remand [Doc. # 6] is **DENIED.** IT IS FURTHER ORDERED that Defendant's motion to dismiss for lack of personal jurisdiction or, in the alternative, to dismiss for failure to state a claim upon which relief can be granted [Doc. # 3] is **DENIED.**

---

6. Because the court finds that personal jurisdiction is proper under the two-step inquiry for personal jurisdiction, *see Vishay Intertechnology,* 696 F.2d at 1064, the court need not address Plaintiff's argument that the consent

to jurisdiction clause in the alleged contract provides a sufficient basis, standing alone, for this court to exercise personal jurisdiction over the Defendant in this matter.