**Richard STROTHER, et al., Plaintiffs,**

v.

**William HARTE, et al., Defendants.**

**No. 00 Civ. 4460(DC).**

United States District Court, S.D. New York.

April 25, 2001.

Richard Strother, Middletown, Rhode Island, Plaintiff, pro se.

Stern, Levy & Pellegrino, LLP, By: Joel S. Stern, New York, New York, for Defendants.

### MEMORANDUM DECISION

CHIN, District Judge.

This case was transferred to this Court from the United States District Court for the District of Rhode Island. Defendants move to dismiss the complaint pursuant to Fed.R.Civ.P. 9 and 12(b)(1) and (6) or, alternatively, to strike scandalous matter pursuant to Fed.R.Civ.P. 12(f). For the reasons that follow, the motion to dismiss is granted and the complaint is dismissed.

#### 1. Subject Matter Jurisdiction

■ The complaint purports to base subject matter jurisdiction both on diversi-

ty jurisdiction and federal question jurisdiction. (*See* Cmplt. ¶¶ 1(a), (b)). The complaint fails, however, to properly allege the existence of diversity jurisdiction.

The complaint names as plaintiffs Richard Strother; Strother Investment Co., Inc. ("SIC"), a Delaware corporation with its principal place of business in Rhode Island; and Strother Film Partners III ("SFP"), a California limited partnership.[1] The complaint names as defendants eight individuals, alleged to reside in Illinois, Michigan, and New York, as well as two law firms: Beigel and Sandler, Ltd. ("Beigel & Sandler"), and Stern and Levy, LLC ("Stern & Levy"). The complaint alleges that Beigel & Sandler and Stern & Levy are "either corporations or other forms of business duly formed under the laws of the State of New York or a State other than the State of Rhode Island." (Cmplt.¶¶ 8, 9, 10).

The complaint does not sufficiently allege diversity jurisdiction, for it fails to allege complete diversity. For purposes of diversity jurisdiction, a limited liability company has the citizenship of each of its members. *Cabrini Dev. Council v. LCA–Vision, Inc.*, 197 F.R.D. 90, 93 (S.D.N.Y. 2000). Likewise, a limited partnership has the citizenship of each of its partners. Here, it is unclear from the complaint whether there is any overlap among plaintiffs and defendants or any of their partners or members. The complaint does not indicate where SFP's partners or Beigel & Sandler's partners or Stern & Levy's members "reside." Consequently, complete diversity has not been properly alleged.

Federal question jurisdiction is based on the purported civil rights claims as well as claims under the Right to Financial Privacy Act (the "Financial Privacy Act"), 12 U.S.C. § 3401 *et seq.*, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* As set forth below, however, plaintiffs fail to state a claim upon which relief can be granted under the civil rights laws or the Financial Privacy Act or RICO. Hence, federal question jurisdiction also does not exist.

### 2. *Failure to State a Claim*

#### a. *Section 1983*

Plaintiffs purport to bring this action pursuant to 42 U.S.C. § 1983, but § 1983 is clearly inapplicable. A plaintiff may invoke § 1983 for violations of his constitutional rights by a defendant acting "under color of any statute, ordinance, regulation, custom, or usage, of any *State* or Territory or the District of Columbia." 42 U.S.C. § 1983 (emphasis added). The complaint here does not allege any involvement by anyone acting under color of state law. Hence, plaintiffs fail to state a claim under § 1983.

#### b. *Bivens*

Plaintiffs apparently are seeking to assert claims against defendants pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), but plaintiffs' *Bivens* claims fail as well.

---

1. The only opposition papers submitted in this case were submitted by Strother, as plaintiff *pro se*. Although Strother has a law degree, he was either disbarred or suspended from the practice of law and is not currently licensed to practice. Although he may appear *pro se*, he cannot act as attorney for anyone other than himself. Moreover, the rules of this Court require that a corporation or partnership or limited liability corporation appear by counsel. Counsel did eventually appear for SIC and SFP, but not until after the motion to dismiss was fully briefed. Counsel never requested the opportunity to submit papers on behalf of SIC and SFP.

*Bivens* claims may be brought against individuals acting under color of federal law—usually an officer, employee, or agent of the United States. *Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 484–86, 114 S.Ct. 996, 127 .L.Ed.2d 308 (1994). Here, plaintiffs have not named any federal officers, employees, or agents as defendants; instead, they have named only private individuals and business entities.

■ Private individuals and business entities may be sued under *Bivens* if they are acting under color of federal law. *Malesko v. Correctional Servs. Corp.,* 229 F.3d 374, 380 (2d Cir.2000); *Dorman v. Zavatsky,* No. CV–94–2471 (DGT), 1995 WL 451018, at *4 (E.D.N.Y. July 21, 1995). To demonstrate that a private party was acting under color of federal law, "a plaintiff must establish that defendant's actions were commanded or encouraged by the federal government, or that the defendants were 'so intertwined with the government as to become painted with color of [federal] action.' " *Dorman,* 1995 WL 451018, at *4 (quoting *Mahoney v. Nat'l Org. for Women,* 681 F.Supp. 129, 132 (D.Conn.1987)). A private party is not transformed into a "federal actor" merely because he or she invokes the judicial or administrative process. *Id.; see also Ginsberg v. Healey Car & Truck Leasing, Inc.,* 189 F.3d 268, 272 (2d Cir.1999) (holding, in § 1983 case, that a private party did not become a state actor responsible for subsequent, independent actions of police officer simply by "legitimately" calling for official assistance or protection).

■ Here, the complaint fails to allege that any of the defendants was a federal actor for purposes of *Bivens.* Clearly, the complaint does not allege that the federal government encouraged or commanded the defendants to act, nor were the actions of the defendants so "intertwined" with federal government that these private individuals and entities—former limited partners of SFP and their lawyers—were transformed into federal actors.

The complaint alleges that an Assistant United States Attorney (the "AUSA") and an FBI agent in the District of Connecticut were "recruited" into defendants' "conspiracy" when certain defendants made false statements to the AUSA and FBI agent to induce them to "begin a malicious prosecution" of Strother. (Cmplt.¶¶ 74, 75, 76, 90–92). The complaint further alleges that the AUSA and/or FBI agent improperly disclosed certain grand jury materials to defendants in violation of Fed. R.Crim.P. 6(e). (*Id.* ¶¶ 78–82). The complaint also alleges that the FBI agent "fabricated" a report that was released to defendants and that was then purportedly used by defendants in a civil suit in New York state court. (*Id.* ¶¶ 98–100).

These allegations are insufficient for two reasons. First, plaintiffs are precluded from arguing that Strother was "maliciously prosecuted" because he was in fact convicted of bank fraud. He was convicted in 1994 of bank fraud following a jury trial in the United States District Court for the District of Connecticut. Although the conviction was reversed, *United States v. Strother,* 49 F.3d 869 (2d Cir.1995), Strother was convicted when he was re-tried (in 1996); the second conviction was affirmed. *United States v. Strother,* No. 97–1024, 1997 WL 643924 (2d Cir. Oct.17, 1997) (unpublished opinion). Hence, any suggestion that defendants were involved with the federal government in a conspiracy to maliciously prosecute Strother must be rejected as a matter of law, as the prosecution resulted in a final conviction. *See O'Brien v. Alexander,* 898 F.Supp. 162, 165–66 (S.D.N.Y.1995) (holding that to succeed on claim for malicious prosecution, plaintiff must show, *inter alia,* termination of prior proceeding in favor of plaintiff or

under circumstances indicating innocence), *aff'd,* 101 F.3d 1479 (2d Cir.1996).

Second, even assuming the AUSA and FBI agent improperly released materials to defendants for use in their disputes with plaintiffs, defendants were not transformed into federal actors. Plaintiffs' disputes with defendants were private ones; they were the subject of a state court civil suit in New York that was eventually settled as well as subsequent litigation in New Jersey bankruptcy proceedings. That a federal prosecutor and agent might have leaked some information to defendants—assuming that actually happened—for use in a purely private dispute does not convert defendants' actions into federal actions that are properly the basis for a *Bivens* claim.

### c. *The Financial Privacy Act*

■ Plaintiffs' reliance on the Financial Privacy Act, 12 U.S.C. § 3401 *et seq.*, is misplaced. That statute governs the use of financial records obtained from financial institutions by government authorities. Plaintiffs contend that their rights under the Financial Privacy Act were violated by the purported improper release by the AUSA and FBI agent of financial records obtained during the grand jury investigation.

The Financial Privacy Act provides for the filing of civil suits by customers against financial institutions or agencies or departments of the United States for violations of the statute. 12 U.S.C. § 3417(a). The statute provides that "[t]he remedies and sanctions described in this chapter shall be the *only* authorized judicial remedies and sanctions for violations of this chapter." 12 U.S.C. § 3417(d). As no provision is made for the filing of suit against other individuals or entities, the claims that plaintiffs have purported to bring against defendants in this action for alleged violations of the Financial Privacy Act are barred.

### d. *RICO*

In Counts XX and XXI of the complaint, plaintiffs purport to state claims under RICO. In particular, plaintiffs allege violations of § 1962(c), which prohibits "any person employed by or associated with any enterprise" from conducting or participating in the "enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Plaintiffs also allege violations of § 1962(d), which makes it unlawful to conspire to violate §§ 1962(a)-(c).

■ To state a claim under § 1962(c), plaintiffs must establish that a "person" (1) conducted or participated in the conduct of (2) an enterprise's affairs (3) through a pattern (4) of racketeering activity (5) that caused injury to plaintiffs' business or property. *See Lippe v. Bairnco Corp.,* 225 B.R. 846, 860 (S.D.N.Y.1998). To establish a "pattern" of racketeering activity, plaintiffs must allege that each defendant, or "person," committed two predicate racketeering acts, that the acts are related, and that "they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). In addition, the "person" and the "enterprise" must be distinct, and the distinctiveness requirement cannot be met merely by alleging that an enterprise consists of a corporation and its employees who carry out the corporation's regular affairs. *See Black Radio Network, Inc. v. NYNEX Corp.,* 44 F.Supp.2d 565, 580 (S.D.N.Y.1999).

■ Here, plaintiffs have not sufficiently alleged the requisite elements of a RICO claim. They have not alleged a pattern of racketeering activity. They have lumped the defendants together,

without identifying the alleged racketeering acts that each defendant purportedly committed. They have not alleged an enterprise "distinct" from the persons purportedly carrying out the enterprise's affairs; indeed, the complaint alleges that "[d]efendants were each employed by or associated with, Harte, [Beigel & Sandler,] and [Stern & Levy], enterprises engaged in, and the activities of which affected, interstate and foreign commerce...." (Cmplt.¶ 206). Hence, the complaint alleges that the affairs of the enterprises were being carried out by the enterprises' own employees and associates. *See Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1063 (2d Cir.1996) ("[D]istinctiveness requirement ... may not be circumvented 'by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant....'"). Lastly, the complaint does not clearly identify the alleged enterprises.

As plaintiffs' claim pursuant to § 1962(c) fails, their claim of a conspiracy under § 1962(d) to violate § 1962(c) fails as well.

Hence, the RICO claims are dismissed.

### e. *Statutes of Limitations*

The complaint also fails to state a claim upon which relief can be granted because plaintiffs' purported federal claims are barred by the applicable statute of limitations.

#### (i) *Bivens*

■ The statute of limitations for *Bivens* actions arising in New York is three years. *Tapia–Ortiz v. Doe*, 171 F.3d 150, 151 (2d Cir.1999); *Kronisch v. United*

*States*, 150 F.3d 112, 123 (2d Cir.1998).[2] Thus, even assuming plaintiffs have a viable *Bivens* claim because defendants are "federal actors," the claims are time-barred.

The bulk of the actions in question occurred in 1993 and 1994. All of defendants' alleged actions with any arguable federal connections occurred in 1993 and 1994. (*See* Cmplt. ¶¶ 74–82, 90–118). This action was not commenced until February 17, 1999, well more than three years later. Hence, the *Bivens* claims are time-barred.

Plaintiffs argue that their claims are not time-barred because the alleged conspiracy continued with the retrial of Strother, purportedly in August 1997,[3] and certain steps taken in the bankruptcy proceedings in New Jersey in 1998. (Pl. Mem. at 16). These arguments are rejected, for these actions cannot be deemed part of any conspiracy. Strother was convicted in the criminal case and his conviction was affirmed. Likewise, actions taken in the bankruptcy proceeding cannot be deemed part of a conspiracy. If plaintiffs had any complaints about any actions taken by defendants in the bankruptcy proceedings, their recourse was to seek relief from the bankruptcy court in those proceedings and to appeal from any adverse rulings. Plaintiffs cannot now challenge those proceedings on the theory that they are part of a conspiracy to violate plaintiffs' civil rights.

#### (ii) *Financial Privacy Act*

Likewise, even assuming plaintiffs have stated claims under the Financial Privacy Act, the claims must be dismissed as time-barred. Actions to enforce the provisions

---

2. Although they discuss the issue in the context of § 1983, both sides agree that the Court should look to New York law to determine the applicable statute of limitations. (Pl. Mem. at 15; Def. Mem. at 13–14).

3. Strother was actually re-tried in 1996, and he was resentenced on November 12, 1996. *See Strother*, 1997 WL 643924.

of this statute must be brought within three years after the violation occurred or was discovered, whichever was later. 12 U.S.C. § 3416. The alleged disclosures were made in 1993 or 1994. In addition, plaintiffs were provided with notice of the disclosures in 1994 by virtue of an affidavit that was submitted in the state court litigation. (November 7, 2000, Stern Aff. ¶ 2 & Ex. 13). Hence, the claims are untimely, as plaintiffs were aware of the disclosures more than three years prior to filing suit.

### (iii) *RICO*

The statute of limitations for RICO claims is four years. The Second Circuit applies a "separate accrual" rule—"a new claim accrues, triggering a new four-year limitations period, each time plaintiff discovers, or should have discovered, a new injury caused by the predicate RICO violations." *Bingham v. Zolt,* 66 F.3d 553, 559 (2d Cir.1995). "A necessary corollary of the separate accrual rule is that plaintiff may only recover for injuries discovered or discoverable within four years of the time suit is brought." *Id.* at 560.

Here, all of plaintiffs' claims for injuries discovered (or discoverable) prior to February 17, 1995, are time-barred. The only facts alleged in the complaint after that date are facts relating to the bankruptcy proceedings in New Jersey after SFP filed for bankruptcy in March 27, 1995. (*See* Cmplt. ¶¶ 121–40). These facts, however, cannot be the basis for a RICO claim; again, to the extent plaintiffs were aggrieved by any of defendants' actions in the bankruptcy proceedings, their remedy was to seek relief from the bankruptcy court or to appeal from any adverse rulings. Plaintiffs cannot collaterally challenge those proceedings or rulings by ar-

guing that they constitute RICO violations. Accordingly, no timely RICO claims exist.

### *CONCLUSION*

Defendants have also asserted other defenses to the complaint. I do not reach them, for I am dismissing the complaint for the reasons set forth above. To the extent plaintiffs have any viable state law claims (and I do not believe there are any),[4] I decline to exercise supplemental jurisdiction over them.

Defendants' motion to dismiss is granted; the complaint is dismissed, with prejudice as to the federal claims. The Clerk of the Court shall enter judgment accordingly.

SO ORDERED.

---

4. Many, if not all, of the state law claims, for example, are time-barred.