Pauline JOHNSON–BROWN
et al., Plaintiffs,

v.

2200 M STREET LLC et
al., Defendants.

No. CIV.A. 02–1756 RMU.

United States District Court,
District of Columbia.

April 8, 2003.

March 31, 2003.

Jonathan K. Tycko, Tycko Zavareei LLP, Washington, DC, for Pauline Johnson-Brown, Lara Michelle Brown.

Judith A. Miller, Laurie S. Fulton, Williams & Connolly LLP, Washington, DC, for 2200 M. Street LLC.

Judith A. Miller, Williams & Connolly, LLP, Washington, DC, for Millennium Manager, I, Millennium Partners Management, Inc., Millenium Partners, LLC.

*MEMORANDUM OPINION*

URBINA, District Judge.

### GRANTING THE PLAINTIFFS' MOTION FOR REMAND AND DIRECTING THE DEFENDANTS TO PAY THE PLAINTIFFS' COSTS

## I. INTRODUCTION

This contract case comes before the court on the plaintiffs' motion to remand the case to the Superior Court of the District of Columbia ("Superior Court"), following the defendants' removal of the case to this court on the proferred basis of diversity jurisdiction. Upon consideration of the parties' submissions, the relevant law, and the record of this case, the court grants the plaintiffs' motion to remand specifically because the defendants have failed to sufficiently establish diversity of citizenship. In addition, the court directs the defendants to pay the plaintiffs' costs and expenses incurred as a result of the improper removal.

## II. BACKGROUND

The defendants—2200 M Street LLC, Millennium Partners LLC, Millennium Partners Management LLC, and Millennium Manager 1, Inc.—are engaged in developing a real-estate complex in the District of Columbia that includes a Ritz–Carlton hotel, a Sports Club/L.A., and 162 condominium units marketed as "The Residences at the Ritz–Carlton, Washington, D.C." ("Ritz–Carlton Residences"). Compl. at 2.

In August 1999, plaintiff Pauline Johnson–Brown contracted with the defendants to purchase a condominium in the Ritz–Carlton Residences, and plaintiff Lara Michelle Brown joined the contract by addendum. *Id.* at 5. Soon after taking possession of the condominium in December 2001, the plaintiffs began noticing problems with their unit and the building as a

whole. *Id.* at 7. These problems included faulty and delayed construction, frequent flooding of water and sewage, and varieties of toxic mold growing in the walls that allegedly caused debilitating health problems to the plaintiffs' tenants. *Id.* at 8, 10. The plaintiffs allege that the defendants fraudulently concealed their knowledge of these problems from the owners, tenants, and potential purchasers of the Ritz–Carlton Residences. *Id.* at 9, 11.

In July 2002, the plaintiffs filed suit against the defendants in the Superior Court, alleging fraud, negligence, breach of implied and statutory warranties, strict liability, and violations of the D.C. Consumer Protection Act. *Id.* at 13–18.

On September 3, 2002, the defendants removed the case to this court on the proffered basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. Defs.' Notice of Removal at 2. In alleging diversity jurisdiction, the defendants identified the citizenship for the three LLC defendants as well as the corporate defendant according to the statutory criteria used for corporations. *Id.* at 3–4.

The plaintiffs filed their motion to remand the case to the Superior Court on September 26, 2002. In support of remand, the plaintiffs assert that the LLC defendants misidentified their citizenship by misapplying the corporate-citizenship standard and the court therefore cannot exercise jurisdiction over the matter. Pls.' Mot. to Remand at 5, 8. The court agrees.

### III. ANALYSIS

#### A. Legal Standard for Remand

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938). A district court may assert its jurisdiction over a case when the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00 per plaintiff exclusive of interest and costs. 28 U.S.C. § 1332(a). If the plaintiff originally filed the case in state court but the parties are diverse, the amount in controversy is sufficient, none of the defendants is a citizen of the state in which the district court sits and the defendants all consent to removal, then the defendant has a statutory right to remove the case from the state court and avail himself of the federal court system. *Id.* § 1441(a)-(b). Nevertheless, if at any time prior to final judgment it becomes clear that there is a defect in removal procedures or that the removal court lacks subject-matter jurisdiction, the removal court must remand the case to the state court from which the defendants originally removed the case. *Id.* § 1447(c). If the federal court lacks subject-matter jurisdiction, remand is mandatory and not reviewable on appeal. *Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 196 (D.C.Cir.2002). The court strictly construes removal status because of federalism concerns. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). Where the need to remand is not self-evident, the court must resolve any ambiguities concerning the propriety of removal in favor of remand. *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir.1999); *Nwachukwu v. Karl*, 223 F.Supp.2d 60, 66 (D.D.C.2002). Finally, the defendant bears the burden of proving the propriety of removal, and if the defendant cannot meet this burden, the court must remand the case. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921); *Nat'l Org. for Women v. Mutual of Omaha Ins. Co.*, 612 F.Supp. 100,

101 (D.D.C.1985) (Flannery, J.); *Gateway 2000, Inc. v. Cyrix Corp.*, 942 F.Supp. 985, 989 (D.N.J.1996).

## B. Citizenship of Non–Corporate Entities for Purposes of Diversity Jurisdiction

■ The diversity statute explicitly establishes the citizenship status of corporations as having the dual citizenship of their place of incorporation and their "principal place of business." 28 U.S.C. § 1332(c)(1). Although the diversity statute does not specify the citizenship status for non-corporate legal persons, the Supreme Court has long maintained a bright-line rule limiting corporate citizenship to corporations (the "corporate-citizenship rule"). *C.T. Carden v. Arkoma Assocs.*, 494 U.S. 185, 190, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990) (explaining that " 'the tradition of the common law ... is to treat as legal persons only incorporated groups and to assimilate all others to partnerships' ") (quoting *People of Puerto Rico v. Russell & Co.*, 288 U.S. 476, 480, 53 S.Ct. 447, 77 L.Ed. 903 (1933)).

Excluded from corporate citizenship by the Supreme Court's bright-line rule, non-corporate entities are analogized to partnerships, which carry the citizenship of their members. *Carden*, 494 U.S. at 195–96, 110 S.Ct. 1015. Throughout a century of rulings, the Court has displayed an "admirable consistency" of jurisprudence by refusing to extend corporate citizenship to other legal persons or entities. *Carden*, 494 U.S. at 189, 110 S.Ct. 1015. In particular, the Court has rejected attempts to extend corporate citizenship to limited partnerships, labor unions, limited-partnership associations, and joint-stock companies. *Carden*, 494 U.S. at 188–90, 110 S.Ct. 1015 (limited partnerships); *United Steelworkers of Am. v. R.H. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965) (unions); *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 20 S.Ct. 690, 44 L.Ed. 842 (1900) (limited-partnership associations); *Chapman v. Barney*, 129 U.S. 677, 9 S.Ct. 426, 32 L.Ed. 800 (1889) (joint-stock companies).[1]

The Court has acknowledged that its bright-line rule separating corporations from all other legal entities may seem hyper-technical, elevating form over substance. *Carden*, 494 U.S. at 197, 110 S.Ct. 1015. Nevertheless, the Court has frequently asserted that any adjustment to the rule must be political rather than judicial. *Carden*, 494 U.S. at 197, 110 S.Ct. 1015 (noting that "[w]e have long since decided that, having established special treatment for corporations, we will leave the rest to Congress; we adhere to that decision"); *Bouligny*, 382 U.S. at 150–51, 86 S.Ct. 272 (expressing that "[w]e are of the view that ... pleas for the extension of the diversity jurisdiction to hitherto uncovered broad categories of litigants ought to be made to the Congress and not to the courts"). In sum, a series of decisions by the Supreme Court limits corporate citizenship to corporations, and federal courts are thereby foreclosed from entertaining arguments that seek to modify this rule.

## C. The Court Determines That Removal Was Improper

■ The defendants removed the pending action from the Superior Court, assert-

---

1. The Court has carved out a narrow exception for foreign entities. In such cases, the court first must categorize the foreign entity as a corporation or a non-corporation prior to defining its citizenship. *Russell*, 288 U.S. at 480–85, 53 S.Ct. 447 (analogizing the civil-law entity known as a "sociedad en comandita" to a corporation rather than a limited partnership). As subsequent cases have made clear, *Russell* analysis is limited to foreign entities. *Carden*, 494 U.S. at 190, 110 S.Ct. 1015 (stating that "*Russell* [is] a case resolving the distinctive problem 'of fitting an exotic creation of the civil law ... into a federal scheme which knew it not' ") (citing *Bouligny*, 382 U.S. at 151, 86 S.Ct. 272).

ing that this court has diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. Notice of Removal at 2. Toward that end, the defendants make four arguments justifying their application of the corporate-citizenship rule to LLCs. Defs.' Opp'n to Pls.' Mot. to Remand ("Defs.' Opp'n") at 2–18. Each of the defendants' arguments is entirely without merit.

The defendants' first argument in support of removal is that *Carden* merely established the citizenship of a limited partnership and is inapplicable to other non-corporate entities. Defs.' Opp'n at 5–6. The defendants' interpretation is a bizarre misreading of the *Carden* Court's express reasoning. The Court based its holding that a limited partnership does not enjoy corporate citizenship on the bright-line rule that corporate citizenship is exclusive to corporations, a rule which the Court reiterates at least three times as the underlying principle guiding its holding: "[w]hile the rule regarding the treatment of corporations as 'citizens' has become firmly established, we have … just as firmly resisted extending that treatment to other entities"; "[t]he tradition of the common law … is to treat as legal persons only incorporated groups and to assimilate all others to partnerships"; and "[w]e have long since decided that, having established special treatment for corporations, we will leave the rest to Congress; we adhere to that decision." *Carden*, 494 U.S. at 189, 190, 197, 110 S.Ct. 1015 (internal quotations omitted). Given the clarity of the reasoning expressed in *Carden*, the court questions how the defendants could fail to recognize the basic concept that corporate citizenship is limited to corporations. .

The defendants' second argument is equally misguided, asserting that other Supreme Court decisions are limited to their facts and that these cases too contain no general rule for determining the citizenship of a non-corporate entity. Defs.' Opp'n at 7–8. To the contrary, over the past century, the Court has unwaveringly reiterated its bright-line rule reserving corporate citizenship to corporations, and then applied this rule to the entity in question. *Carden*, 494 U.S. at 197, 110 S.Ct. 1015; *Bouligny*, 382 U.S. at 153, 86 S.Ct. 272; *Russell*, 288 U.S. at 480, 53 S.Ct. 447; *Great S. Fire Proof Hotel Co.*, 177 U.S. at 457, 20 S.Ct. 690; *Chapman*, 129 U.S. at 682, 9 S.Ct. 426. There are few legal principles with such a consistent and venerable pedigree as the rule that corporate citizenship is limited to corporations. The defendants' interpretation that the law does not enunciate a general citizenship principle flies in the face of established, binding precedent to the contrary.

Equally indefensible is the defendants' third argument that *Russell* authorizes scrutiny by a court of an entity's structure prior to defining its citizenship. Defs.' Opp'n at 9–10. According to the defendants, this court should apply *Russell* to determine that the LLC defendants resemble corporations, thereby authorizing an application of the corporate-citizenship rule to these LLCs. *Id.* at 9–18. The defendants' arguments are entirely misguided because, as explained in note 1 *supra*, the type of analysis employed in *Russell* is confined to foreign entities. *Russell*, 288 U.S. at 480–81, 53 S.Ct. 447; *Carden*, 494 U.S. at 190, 110 S.Ct. 1015. To wit, the Court has instructed that courts should not entertain arguments to extend a *Russell* analysis beyond foreign entities. *Carden*, 494 U.S. at 190 n. 2, 110 S.Ct. 1015 (reasoning that "*Bouligny* considered and rejected applying *Russell* beyond its facts"). Due to the Court's limitation of *Russell* to its facts, the defendants' argument that this court should apply *Russell* in determining the LLC defendants' citizenship is inconsistent with all

but the most distorted reading of the case law.

The defendants' final argument that this court should extend corporate citizenship to LLCs because the Supreme Court has not directly ruled on their status further highlights the weaknesses in the defendants' campaign for removal. Defs.' Opp'n at 10–16. The Court's rule limiting corporate citizenship to corporations excludes, by its very definition, every non-corporate entity from corporate citizenship. *Id.* at 190, 110 S.Ct. 1015 (holding that the common law "treat[s] as legal persons *only* incorporated groups and [ ] assimilate[s] *all others* to partnerships") (emphasis added). Given the explicit, consistent, and bright-line nature of this rule, the defendants' argument is insubstantial at best and does not help to establish removal jurisdiction. Indeed, this court's research indicates that every court that has addressed the citizenship status of LLCs has held unequivocally that LLCs do not enjoy corporate citizenship, an unsurprising uniformity of interpretation given the Supreme Court's sharp distinction between corporate and non-corporate citizenship.[2]

Because the defendants' arguments in support of removal are unmerited, remand is in order. 28 U.S.C. § 1441(c). The plaintiff argues that the court should remand the case to the Superior Court because the defendants have not demonstrated sufficiently any basis for federal jurisdiction and because their arguments concerning LLC citizenship undermine their position in favor of removal. Pls.' Mot. to Remand at 3–5. As noted, if the federal court lacks subject-matter jurisdiction, remand is mandatory. *Republic of Venezuela,* 287 F.3d at 196. Furthermore, it is the defendant who bears the burden of proof that removal is proper, and if the defendant cannot meet that burden then the court must remand the case. *Wilson,* 257 U.S. at 97, 42 S.Ct. 35; *Nat'l Org. for Women,* 612 F.Supp. at 101; *Gateway 2000,* 942 F.Supp. at 989. Here, the defendants have misidentified the citizenship of the LLC defendants, and so they have failed to prove that the parties are diverse and that the court has subject-matter jurisdiction under 28 U.S.C. § 1441(a)—(b). Accordingly, the court grants the plaintiffs' motion to remand the case to the Superior Court.

## D. The Court Awards Costs and Expenses of Removal to the Plaintiffs

■ One final point deserves attention. Because the court today decides to remand this matter to the Superior Court, the court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the remov-

---

2. *E.g., Handelsman v. Bedford Village Assocs. Ltd. P'ship,* 213 F.3d 48, 51–52 (2d Cir.2000); *Cosgrove v. Bartolotta,* 150 F.3d 729, 731 (7th Cir.1998); *TPS Utilicom Servs., Inc. v. AT & T Corp.,* 223 F.Supp.2d 1089, 1101–02 (C.D.Cal. 2002); *Trowbridge v. Dimitri's 50's Diner, L.L.C.,* 208 F.Supp.2d 908, 910 (N.D.Ill.2002); *Birdsong v. Westglen Endoscopy Ctr., L.L.C.,* 176 F.Supp.2d 1245, 1248 (D.Kan.2001); *Strother v. Harte,* 171 F.Supp.2d 203, 205 (S.D.N.Y.2001); *Shonk Land Co. LLC v. Ark Land Co.,* 170 F.Supp.2d 660, 661–62 (S.D.W.Va.2001); *Pippett v. Waterford Dev., LLC,* 166 F.Supp.2d 233, 238 (E.D.Pa.2001); *Chen v. Mayflower Transit, Inc.,* 159 F.Supp.2d 1103, 1106 n. 1 (N.D.Ill.2001); *JBG/JER Shady Grove, LLC v. Eastman Kodak Co.,* 127 F.Supp.2d 700, 701 (D.Md.2001); *Weber v. King,* 110 F.Supp.2d 124, 128–29 (E.D.N.Y.2000); *Triad Motorsports, LLC v. Pharbco Mktg. Group, Inc.,* 104 F.Supp.2d 590, 594 (M.D.N.C.2000); *Hale v. MasterSoft Int'l Pty. Ltd.,* 93 F.Supp.2d 1108, 1112 (D.Colo.2000); *Keith v. Black Diamond Advisors, Inc.,* 48 F.Supp.2d 326, 329–30 (S.D.N.Y. 1999); *JMTR Enters., L.L.C. v. Duchin,* 42 F.Supp.2d 87, 93–94 (D.Mass.1999); *Int'l Flavors & Textures, LLC v. Gardner,* 966 F.Supp. 552, 554–55 (W.D.Mich.1997).

al." 28 U.S.C. § 1447(c). The imposition of costs and expenses is at the court's discretion. *Weigert v. Georgetown Univ.*, 43 F.Supp.2d 5, 7 (D.D.C.1999); *Commentary on 1988 Revision of Section 1447* (opining that "[t]he matter is left to the court's discretion, to be exercised based on the nature of the removal and the nature of the remand").

Courts uniformly have held that a relevant factor for imposing costs and expenses is whether the removing party contradicts well-settled law in attempting to remove the case to federal court. Indeed, if non-removability is obvious or contrary to well-settled law, courts regularly impose costs and expenses incurred as a result of the removal. *Garcia v. Amfels, Inc.*, 254 F.3d 585, 588 (5th Cir.2001); *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410–411 (7th Cir.2000) (holding that the court would have abused its discretion by not imposing fees because "[r]emoval was unjustified under settled law"). The converse is equally true: courts tend not to impose costs and expenses on the removing party if the relevant law is unsettled or removability is unclear. *Roxbury Condo. Assoc., Inc. v. Anthony S. Cupo Agency*, 316 F.3d 224, 228 (3d Cir.2003) (reasoning that "[u]nder these less than bright-line circumstances, we believe that . . . the District Court would have abused its discretion by awarding attorneys' fees"); *Hofler v. Aetna U.S. Healthcare of Calif.*, 296 F.3d 764, 770 (9th Cir.2002) (stating that "[s]uch fees are proper when removal is wrong as a matter of law"); *Ibrahim v. 1417 N Street Assocs., L.P.*, 950 F.Supp. 406, 408 (D.D.C.1997) (explaining that "[t]he award of costs on remand is usually appropriate only when the nonremovability of the action is obvious").

In the present case, the defendants' arguments in favor of removal are dubious at best, if not disingenuous. Given the century of Supreme Court precedent, it is hard to imagine a more well-settled authority than the corporate-citizenship rule. *See* III.B., *supra.* Furthermore, the defendants fail to point to any lower court decision supporting their argument presumably because every court that has addressed the issue has held that LLCs do not qualify for corporate citizenship. *See* note 2, *supra.* Because the defendants' removal petition is supported by no legal authority and therefore lacks merit, this court requires the defendants to pay the plaintiffs' costs and actual expenses incurred as a result of the removal. 28 U.S.C. § 1447(c).

## IV. CONCLUSION

For the foregoing reasons, the court grants the plaintiffs' motion for remand. In addition, the court directs the defendants to pay the plaintiffs' costs and actual expenses incurred as a result of the defendants' attempt to remove the case to this court. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this *8th* day of April 2003.

### ORDER

GRANTING THE PLAINTIFFS' MOTION FOR REMAND AND DIRECTING THE DEFENDANTS TO PAY THE PLAINTIFFS' COSTS

For the reasons stated in the court's Memorandum Opinion separately and contemporaneously issued this 8th day of April 2003, it is hereby

**ORDERED** that the plaintiffs' motion for remand is **GRANTED**; and it is

**FURTHER ORDERED** that the defendants pay the plaintiffs the costs and expenses they incurred as a result of the defendants' improper removal of the case to this court in an amount to be determined by the court; and it is

**ORDERED** that by April 14, 2003, the plaintiffs file an itemized list of costs and expenses relevant to the defendants' removal; and it is

**FURTHER ORDERED** that by April 16, 2003, the defendants may file a response[3] to the plaintiffs' list of itemized costs and expenses not to exceed three pages in length.

**SO ORDERED.**

---

**3.** The court does not order the defendants to file a response. If the defendants do wish to file a response, however, that response shall be limited to the narrow issue of the appropriate calculation of the compensatory sum owed to the plaintiffs. In other words, this is not an opportunity to litigate the issue of the propriety of imposing costs.