**Malika SAYLAB, et al., Plaintiffs,**

v.

**The HARFORD MUTUAL INSURANCE COMPANY, et al., Defendants.**

**No. CIV.A.02–0454 RMC.**

United States District Court, District of Columbia.

May 15, 2003.

---

### *MEMORANDUM OPINION*

COLLYER, District Judge.

On August 2, 1998, Oscar Flores drove his car head-on into a vehicle in which the Saylab family was riding, causing the deaths of Salma and Sarvanna Saylab and injuries to Ahmad and Malika Saylab. Mr. Flores was intoxicated at the time of the incident. The Saylab family sued the El Tipico restaurant and its owner, Alicia De-Leon, and the Don Juan restaurant and its owners, Rosa Ruiz and Luis Alberto Ferrufino, in the Superior Court of the District of Columbia. These defendants are allegedly responsible to the Saylabs for continuing to serve alcoholic beverages to an intoxicated customer and allowing him to drive his car in an intoxicated state.

On January 31, 2002, the Saylab family filed the instant complaint against The Harford Mutual Insurance Company ("Harford"), Associated Insurance Management, Inc. ("Associated"), Judith Meyers, the Don Juan restaurant, and that restaurant's two owners. Essentially, this lawsuit seeks a judicial declaration that Harford, Associated, and/or Ms. Meyers (collectively, "Insurance Defendants") owe a duty to indemnify, and a duty to defend, Don Juan and its owners for any liabilities that may be found against them. The Insurance Defendants removed the case from Superior Court. Pending before this Court are a motion to remand filed by the Saylab family and motions to dismiss filed by Harford and Associated/Ms. Meyers.

There is an underlying tragedy here of which this fight over insurance coverage is blocking the resolution. There has been no determination on liability because the Superior Court stayed the original suits against the restaurants until the question of insurance coverage was determined. Unfortunately, a ruling on the pending motions will not answer that question.

## I. BACKGROUND

The litigation began when the Saylab family instituted four separate lawsuits against the El Tipico restaurant and its owner (collectively, "El Tipico") on August 1, 2000, claiming liability for the family's losses and injuries. The lawsuits were consolidated into a single action. Thereafter, the complaint was amended on July 25, 2001, to add the Don Juan restaurant and its owners (collectively, "Don Juan"). In September 2001, those cases were stayed pending resolution of the insurance issues.

It appears from the record that Don Juan may not have the resources to defend itself. Thus, the Saylab family has taken on the task of attempting to require one or all of the Insurance Defendants to indem-nify and defend Don Juan—both for purposes of proving liability and to obtain an eventual remedy. After Harford denied insurance coverage, the Saylab family instituted a lawsuit in Superior Court against Harford, Associated, Ms. Meyers, and Don Juan. Judge Duncan–Peters consolidated the lawsuit against the Insurance Defendants and Don Juan with the pending cases against the restaurants on March 6, 2003. *See* Pls. Opp. to Def. Harford's Mot. to Dismiss Ex. 3. The Insurance Defendants filed a notice of removal to federal court on March 11, 2003. Only the January 31, 2002, complaint filed against the Insurance Defendants and Don Juan is before this Court.

As to Harford, the lawsuit is styled as a declaratory judgment action brought by the alleged beneficiary of the insurance policy prior to a determination of the insured's liability. It contends that Harford has improperly denied insurance coverage to Don Juan as required by law. Alternatively, it seeks to have certain exclusions declared void as against public policy.

The theories of the complaint are more complex as to the other defendants. Ms. Meyers is an insurance agent who works for Associated, an insurance agency. They procured the Harford insurance policy on behalf of Don Juan. The Saylab family is suing Associated and Ms. Meyers together, alleging that they failed to obtain adequate insurance coverage, failed to notify the insured that the policy did not have the coverages allegedly requested, and otherwise deceived the insured as to the nature and scope of the policy actually obtained.

The complaint also names Don Juan (and its owners), alleging a failure to supervise, failure to train, and negligence. No remedy is sought from these particular defendants by way of this complaint. On March 22, 2003, Don Juan attempted to file an answer and cross-claim in Superior

Court, adopting the complaint allegations against the Insurance Defendants. Because the case had already been removed, that court refused to accept the pleading. It is not docketed in this Court, although it is attached to the parties' briefs and referenced liberally.

## II. Legal Standards

The Insurance Defendants separately move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is appropriate only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). " '[T]he complaint must set forth sufficient information to suggest that there exists some recognized legal theory upon which relief can be granted. A court must dismiss a complaint where, even assuming all the factual allegations are true, the plaintiff has failed to establish a right to relief based on those facts.' " *Caudle v. Thomason*, 942 F.Supp. 635, 638 (D.D.C.1996) (quoting *Gregg v. Barrett*, 771 F.2d 539, 547 (D.C.Cir.1985) (internal citations and punctuation omitted)).

The Saylab family moves to remand this case to the Superior Court, arguing that this Court lacks subject matter jurisdiction and diversity jurisdiction under 28 U.S.C. § 1332(a), as well as removal jurisdiction under 28 U.S.C. § 1441(b), because not all of the defendants joined in the notice of removal. Although a federal district court is a court of limited jurisdiction, it enjoys diversity jurisdiction to hear disputes between citizens of different states when the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). Complete diversity of citizenship must exist between opposing parties. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996). In determining citizenship for purposes of removal, the citizenship of purely nominal or formal parties may be disregarded.[1] *See* 14B WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 3723 (3d ed.1998); *Abels v. State Farm Fire & Casualty Co.*, 770 F.2d 26, 29 (3rd Cir.1985). On a motion to remand, the defendants bear the burden of establishing diversity of citizenship and removal status is strictly construed. *See Johnson–Brown v. 2200 M St. LLC*, 257 F.Supp.2d 175, 177 (D.D.C.2003).

## III. ANALYSIS

### A. Motion to Remand

The Saylabs present three arguments in support of their motion to remand to Superior Court: (i) diversity jurisdiction does not exist; (ii) 28 U.S.C. § 1441(c) bars the Court from asserting jurisdiction; and (iii) all defendants did not consent to removal. They also seek to require the Insurance Defendants to pay their costs and attorneys' fees incurred as a result of the removal.

#### 1. 28 U.S.C. § 1332

It is undisputed that all members of the Saylab family live in the Commonwealth of Virginia. The Don Juan restaurant is located in the District of Columbia and is owned and operated by Rosa Ruiz and Louis Alberto Ferrunfino, who are residents of the District. Harford is incorporated in the State of Maryland and also has its principal place of business in that State. Likewise, Associated is a Maryland corporation located in the State of Maryland. Ms. Meyers resides in Maryland. *See* Not. of Rem. ¶¶ 3–5; Pls. Mot. to

---

1. The Insurance Defendants argue that among the categories of nominal or formal parties are those named defendants from whom a plaintiff seeks no relief.

Rem. to Sup.Ct. for D.C. for Lack of Jur. at 5–6.

■ The Saylab family contends that the citizenship of the corporation Harford is defined by 28 U.S.C. § 1332(c)(1), which provides:

> [A] corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance ... to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business ....

The Saylabs argue that Don Juan is a "nominal" defendant only, whose interests are aligned with them against the Insurance Defendants. Therefore, their argument goes, Don Juan should be treated as a plaintiff, not a defendant, with the consequence that Harford should be deemed a citizen of the District of Columbia under § 1332(c)(1), the residence of its insured. If Harford is a citizen of the District of Columbia along with Don Juan, and they oppose each other in this suit, there is no diversity of citizenship to convey jurisdiction to this Court.

■ "[T]he parties must be aligned according to their 'attitude towards the actual and substantial controversy.'" *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 75, 62 S.Ct. 15, 86 L.Ed. 47 (1941) (quoting *Sutton v. English*, 246 U.S. 199, 204, 38 S.Ct. 254, 62 L.Ed. 664 (1918)). "The doctrine of realignment permits and requires a nominal defendant to be treated as a plaintiff for the purpose of defining the real controversy ...." *Id.* at 80, 62 S.Ct. 15 (Jackson, J., dissenting). The "real controversy" in this lawsuit is whether any of the Insurance Defendants owes a duty, through contract or otherwise, to indemnify and defend Don Juan. As to that real controversy, Don Juan is a nominal defendant only, whose interests are completely aligned with the Saylab family. Thus, for purposes of considering diversity jurisdiction, the Court must realign Don Juan to the side of the Saylabs.

■ This realignment does not fully answer the question posed by the motion to remand. Even if Don Juan is realigned with the Saylab plaintiffs, still remaining is whether § 1332(c)(1) applies to transform Harford into a resident of the District of Columbia. To answer this question, the Court must determine if the Saylab lawsuit constitutes a "direct action" within the meaning of the statute. Under § 1332(c)(1), a "direct action" against an insurance company is a lawsuit for payment to remedy the liability of the insured. *See Beckham v. Safeco Ins. Co. of Am.*, 691 F.2d 898, 901–902 (9th Cir.1982) ("Courts have uniformly defined the term 'direct action' as used in this section as those cases in which a party suffering injuries or damage for which another is legally responsible is entitled to bring suit against the other's liability insurer without joining the insured or first obtaining a judgment against him."). The purpose of § 1332(c)(1) was to remove from the federal docket cases "in which both the injured party and the tortfeasor are local residents, but which, under state 'direct action' statutes, are brought against the tortfeasor's foreign insurance carrier without joining the tortfeasor as a defendant." *Id.* at 901.

This lawsuit is not a "direct action" because the Saylab family is not trying to extract payment from the Insurance Defendants for the actions of Don Juan; rather, they seek a declaration of coverage. This understanding of the complaint

is emphatically clarified in the Saylabs' opposition brief to Harford's motion to dismiss. There, they assert that they "are not seeking an adjudication of liability or monetary relief at this time. As is clear from the first sentence of the Complaint, Plaintiffs seek a declaratory judgment." Pls. Opp. to Def. Harford's Mot. to Dismiss at 7. Should the Saylab family win this lawsuit, that victory would have no effect on the completely separate question of whether Don Juan, El Tipico, or anyone else is liable to them for the condition of Mr. Flores.

Concluding that this is not a "direct action" against Harford, the Court finds that § 1332(c)(1) does not apply. Inasmuch as all parties are diverse, without regard to whether the Don Juan restaurant and its owners are deemed defendants or plaintiffs, the Court finds that it possesses diversity jurisdiction.

### 2. 28 U.S.C. § 1441(b)

The Saylab family argues that removal to a federal court may be accomplished only under 28 U.S.C. § 1441 and that § 1441(b) requires complete diversity of citizenship. Section 1441(b) states:

Any civil action for which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

The effect of this language is that a defendant residing in the State in which an action is brought in State court cannot remove the action to federal court. Reprising the argument that Harford should be deemed a citizen of the District of Columbia under § 1332(c)(1), the Saylab

family concludes "Harford is a citizen of the same state in which the action was brought [*i.e.*, the District of Columbia] and removal was improper according to § 1441(b)." Pls. Mem. in Supp. of Mot. to Rem. to Sup.Ct. for D.C. for Lack of Jur. at 10. The Court having already concluded that § 1332(c)(1) does not apply here, this argument fails.

### 3. Consent for Removal

■ The last argument supporting the motion to remand is that Don Juan did not consent to removal and that all defendants must so consent independently and unambiguously. *See Williams v. Howard Univ.*, 984 F.Supp. 27, 28 (D.D.C.1997) (Adopting the "Three Musketeers Rule" that "[m]ultiple defendants must unambiguously and independently show that in seeking to remove a case from state court to federal court they are 'all for one, one for all.'"); *see also Chicago, Rock Island & Pac. Ry. Co. v. Martin*, 178 U.S. 245, 248, 20 S.Ct. 854, 44 L.Ed. 1055 (1900). The Saylabs rely on the rejected answer and cross-claim that Don Juan attempted to file in Superior Court after removal to demonstrate its unwillingness to remove the case to federal court.

This argument, which has merit in other situations, runs into two problems under the present facts. First, as the Saylab family took pains to point out, in determining its jurisdiction the Court must realign the parties into their true postures concerning the matter in dispute. Such a realignment puts Don Juan on the plaintiffs' side of the lawsuit and not with the defendants. *See* Pls. Mem. in Supp. of Mot. to Rem. to Sup.Ct. for D.C. for Lack of Jur. at 7 ("[I]t is commonly beneficial to both the Don Juan Defendants and Saylab to receive a declaratory judgment against the Harford Defendants ...."). It would be inconsistent with that practical and legal conclusion to then grant the motion to

remand solely because Don Juan did not consent to removal. *See generally In re Tobacco/Governmental Health Care Costs Litig.*, 100 F.Supp.2d 31, 40–41 (D.D.C. 2000) (ordering discovery to determine whether a group of non-consenting defendants were actually "cooperating" with the plaintiff, so that the Court should disregard their failure to consent for purposes of the general "unanimity" requirement). Second, the Court finds that Don Juan is a nominal defendant only, making it unnecessary to obtain its consent. *See Williams v. Howard Univ.*, 984 F.Supp. at 30 n. 5. The Saylabs do not seek declaratory relief from Don Juan and have not cited any cases to support their contention that Don Juan is a real party in interest. Therefore, removal was not defective even if the Court assumes that Don Juan did not consent.

#### 4. Costs and Attorneys' Fees

The Saylab family argues that Harford should have known it would be considered a resident of the District of Columbia along with its insured, Don Juan, and that, therefore, the notice of removal had no basis and should not have been filed. The Saylabs seek recovery of their costs and attorneys' fees in preparing the briefs seeking remand. Since the Court has determined that it has diversity jurisdiction over the matter and that 28 U.S.C. § 1332(c)(1) does not apply, it follows that the motion for costs and attorneys' fees must be denied.

### B. Associated/Meyers's Motion to Dismiss

■ Associated and Ms. Meyers have filed a motion to dismiss the Saylab family's complaint against them. They argue that the complaint fails to state a claim upon which relief can be granted because the lawsuit is barred by the statute of limitations and they owed no tort duty to the Saylab family. The Saylabs oppose the motion.

The statute of limitations argument is not persuasive. Assuming for these purposes that Associated and Ms. Meyers are correct and the three-year "catch-all" statute of limitations under D.C.Code § 12–301(8) applies to the complaint allegations, the time did not start running until the Saylab family knew that the insurance policy from Harford did not cover their loss, contrary (it is alleged) to the legal requirements for insurance to cover dram shop liability and the specific requests of Don Juan. Thus, the actual controversy that gave rise to the filing of the declaratory judgment action arose when Harford denied coverage in the fall of 2001. The lawsuit filed in January 2002 was timely.

■ Whether Associated and/or Ms. Meyers owed any tort duty to the Saylab family is a more difficult question. These defendants cite *Jacques v. First Nat'l Bank of Maryland*, 307 Md. 527, 515 A.2d 756 (1986), and argue that "[w]here the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability." Defs. Associated/Meyers's Mot. to Dismiss at 6. The *Jacques* court actually stated:

> In determining whether a tort duty should be recognized in a particular context, two major considerations are: the nature of the harm likely to result from a failure to exercise due care, and the relationship that exists between the parties. Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties .... By contrast, where the risk created is one of personal injury, no such direct relationship need be shown, and the principal determinant of duty becomes foreseeability.

*Id.* at 534–35, 515 A.2d 756. The alleged torts by Associated and Ms. Meyers are "malpractice, errors and omissions which [led] to Don Juan Restaurant Inc.'s purchase of insurance which was not in conformance with the express wishes of Don Juan or in conformance with the laws and requirements of the District of Columbia." Compl. ¶ 15. While the harm to Don Juan may be an economic loss only, it is clear that the Saylab family suffered personal injury as well. Whether that loss to the Saylabs was foreseeable as a result of these defendants' alleged torts, and whether these defendants had an enforceable duty of care to the Saylabs, who are not parties to the insurance contract, cannot be determined at this stage in the litigation. The motion to dismiss will be denied.

### C. Harford's Motion to Dismiss

Harford insists that the Saylab family cannot sue it directly until and unless the liability of its insured, Don Juan, has become fixed. It also argues that it is against public policy to combine the declaratory judgment question of insurance coverage with the tort claims against Don Juan and Associated/Ms. Meyers. The Saylab family objects to Harford's motion to dismiss.

Harford cites numerous cases from the District of Columbia, Maryland, and Virginia to support its argument that an injured person cannot bring a direct claim against the insurance company before obtaining judgment against the tortfeasor. The Saylabs retort that they are seeking a declaratory judgment on the scope of the insurance coverage only and not, at this time, arguing that Harford owes them any payment. *See Allstate Ins. Co. v. Atwood,* 319 Md. 247, 572 A.2d 154, 162–63 (1990) (a declaratory judgment action to interpret the terms of insurance coverage is appropriate prior to judgment against the tortfeasor, although denied because the issue of negligence was the same in each matter); Pls. Opp. to Def. Harford's Mot. to Dismiss at 8, 12 ("Plaintiffs seek a declaratory judgment on the insurance contract (a matter entirely of contract law), not an adjudication of liability or damages under the tort claims.") ("Plaintiffs emphasize that the action currently before the court is for declaratory relief as to the issue of insurance coverage, not issues of liability in the underlying tort cases.").

In addition, the Court notes Harford's reply brief, to wit: "As an initial matter, Harford states that it does not dispute the appropriateness of a declaratory judgment action in this case to determine the coverage provided under the Harford policy issued to Don Juan." Def. Harford's Reply to Opp. to Mot. to Dismiss at 1. Nonetheless, Harford argues that the Saylab family does not have standing or precedent under case law in the District of Columbia to bring a declaratory action. Harford admits that Don Juan could bring such an action and that the cross-claim that Don Juan attempted to file in Superior Court would be effective in that regard. *See* Defs. Jt. Opp. to Pl. Mot. for Rem. at 2 n. 2 ("[I]t appearing that at some later time the Cross-claim would be actually filed, and thus the coverage issue properly before the Court . . . .").

This lawsuit needs resolution and not more delay. Therefore, the Court will deny Harford's motion to dismiss at this time and will grant 30 days for Don Juan to file a cross-claim. Without suggesting what the ruling might be, the Court will entertain a motion to sever the claims against Associated and Ms. Meyers from the claims against Harford, should any party choose to file such a motion.

### IV. CONCLUSION

For these reasons, the motion to remand and the two motions to dismiss are denied. Don Juan and its owners have 30 days to

file a cross-claim on the scope of insurance coverage. Additionally, the parties may file a motion to sever the claims against Associated and Ms. Meyers from those against Harford. A separate order accompanies this memorandum opinion.

### ORDER

For the reasons set forth in the Memorandum Opinion that accompanies this Order, it is hereby

**ORDERED** that Plaintiffs' Motion to Remand is **DENIED.** It is

**FURTHER ORDERED** that Associated Insurance Management, Inc., and Judith Meyers's Motion to Dismiss is **DENIED.** It is

**FURTHER ORDERED** that Harford Mutual Insurance Company's Motion to Dismiss is **DENIED.** It is

**FURTHER ORDERED** that Don Juan Restaurant, Inc., and its owners, Louis Alberto Ferrufino and Rosa Ruiz, have 30 days to file a cross-claim on the scope of insurance coverage.

**SO ORDERED.**